In re Jack Lavon BUDIG and Deborah Ann Budig, Debtors.

Via Christi Regional Medical Center, Plaintiff/Appellant,

v.

Jack Lavon Budig and Deborah Ann Budig, Defendants/Appellees.

Nos. 98–4147–DES, 97–41523. Adversary No. 97–7082.

United States District Court, D. Kansas.

Sept. 3, 1999.

W. Thomas Gilman, Redmond & Nazar, L.L.P., Wichita, KS, for Via Christi Regional Medical Center.

Justice B. King, Fisher, Patterson, Sayler & Smith, Topeka, KS, John C. Herman, Hays, KS, for Jack Lavon Budig and Deborah Ann Budig.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on appeal by the plaintiff, Via Christi Regional Medical Center, from an order of the bankruptcy court filed on August 10, 1998, discharging the debt owed to the plaintiff.

## I. BACKGROUND

On May 17, 1996, debtor Jack Budig suffered chest pains and was admitted to Via Christi Medical Center ("Via Christi"). Mr. Budig underwent heart bypass surgery and was in the hospital for a week. Prior to admission, Mr. Budig signed an "Admissions Consent Agreement" in which he agreed to pay all charges that he incurred and "authorize insurance, Medicare, or Medicaid benefits otherwise payable to [him] to be paid directly to Via Christi Regional Medical Center for services rendered during this hospital stay." Although neither debtor remembered Mr. Budig signing the form, he agreed his signature was on the form. The bankruptcy court noted that at the time Via Christi presented the document to Mr. Budig, it knew that the assignment was ineffective against Blue Cross Blue Shield of Kansas (BCBS) insurance benefits. Kansas case law and K.S.A. 40–19c06(b) allow insurance companies to prohibit assignments, and BCBS policies always include such a provision.

Mrs. Budig obtained the BCBS policy through her employer, the city of Hill City. She testified that she received the policy at work, and had never read it. Mrs. Budig also testified that her husband had authority to sign documents concerning the insurance policy. Mrs. Budig's BCBS health insurance policy prohibits assignments. The policy stated that payment concerning a noncontract provider "will be paid directly to [the insured]." Via Christi is a noncontract provider for BCBS. At the time of treatment, neither debtor understood the meaning of noncontract. Based on past experience, both debtors believed they

would pay a deductible and BCBS would pay Via Christi directly.

In June 1996, the debtors received the hospital bill for $53,784.35. In July 1996, Mrs. Budig received a check from BCBS for $30,962.84. Because Via Christi is a noncontract provider, payment was sent directly to the debtors. BCBS also sent her a "Summary of Claims Processed" which stated, "the difference between the charge and our allowed charge is your responsibility as the provider of care is not contracting with [BCBS]. Your total responsibility is shown in column 9." The amount shown in Column 9, labeled "Your responsibility", was $21,899.26.

Based on past experience, the debtors hoped BCBS would send them the *remaining* $21,899.26. Mrs. Budig did not deposit the check until August 5, 1996, because she feared cashing the check might mean she accepted it as full payment. On August 6, Via Christi sent a letter to the debtors requesting that they send the insurance money and a copy of the "Summary of Claims Processed."

After the heart surgery, Mr. Budig could not go back to work as a truck driver. Ms. Budig's income was also reduced because she had to care for her husband. The debtors used the insurance money to pay for their living expenses and some medical expenses. The debtors did pay Via Christi $10,000 after Via Christi filed a law suit against the debtors. $9,500 came from the remaining insurance proceeds, and $500 came from a sailboat the couple sold. Via Christi obtained a judgment for $42,875.05.

On June 5, 1997, the debtors filed a Chapter 7 bankruptcy. Via Christi filed an adversary action which went to trial in the bankruptcy court. On August 10, 1998, Judge Pusateri entered a judgment in favor of the debtors holding the debt owed Via Christi should be discharged. The judge found that the debt did not fit the § 523(a)(6) exception to discharge because the debtors did not willfully and maliciously injure Via Christi and the in-

surance money was not the property of Via Christi. Via Christi appealed the decision to this court.

## II. STANDARD OF REVIEW

■ 28 U.S.C. § 158(a) grants the court jurisdiction to hear appeals from final orders of the bankruptcy court. The court reviews *de novo* the bankruptcy court's conclusions of law. *Schneider v. Nazar (In re Schneider)*, 864 F.2d 683, 685 (10th Cir.1988). The court examines the bankruptcy court's findings of fact under the "clearly erroneous" standard. *Id.*

## III. DISCUSSION

The bankruptcy code provides that a debt will not be discharged for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The two key issues on appeal are whether the Budigs acted willfully and maliciously when they spent the insurance money and whether Via Christi had a property interest in the insurance money.

### A. Whether debtor's action was willful and malicious?

■ The bankruptcy court found that the debtors' action was not willful and malicious. This is a finding of fact, and this court can only reverse for clear errors. *Schneider*, 864 F.2d at 685. However, what standard of conduct constitutes willful and malicious is an issue of law which is reviewed *de novo*. *Id.*

A recent Supreme Court case clarified the standard of conduct necessary for a "willful" injury to be nondischargeable under 11 U.S.C. § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The issue facing the Court was: "Does § 523(a)(6)'s compass cover acts done intentionally, that cause injury (as Kawaauhaus urge), or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)?" *Id.* at 977. The Court upheld the Eight Circuit's ruling that only acts done with the actual

intent to cause injury would be nondischargeable.

The word willful modifies the word injury. *Id.* The Court compared willful injury to intentional torts which generally require that the actor intend "the consequences of an act" not just "the act itself." *Id.* (quoting Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (Emphasis added)). Reckless and negligent acts are specifically excluded from the Court's interpretation of willful injury. *Id.* at 978. This interpretation is significantly narrow to carry out the "fresh start" purpose of the Bankruptcy Code. If all intentional acts that cause injury were included within willful injury, very few debts would be discharged, and almost every traffic accident or knowing breach of contract would be nondischargeable. *Id.* at 977.

■ Via Christi argues that pre-*Geiger* Tenth Circuit cases have precedential value. *Geiger* rejected the Tenth Circuit's interpretation of § 523(a)(6) based on the case, *In re Franklin,* 726 F.2d 606 (10th Cir.1984). *Geiger,* 118 S.Ct. at 976. However, the Tenth Circuit limited the *Franklin* holding to cases under the old Bankruptcy Code. *In re Thurman,* 901 F.2d 839, 841 (10th Cir.1990). This left open the possibility that Tenth Circuit cases interpreting willful injury were binding.

Several Tenth Circuit cases state a willful and malicious injury exists when the debtor either possesses actual knowledge that injury will result or when the injury is reasonably foreseeable. *In re Pasek,* 983 F.2d 1524, 1527 (10th Cir.1993), *In re Grey,* 902 F.2d 1479, 1481 (10th Cir.1990), and *In re Posta,* 866 F.2d 364, 367 (10th Cir.1989). However, the reasonably foreseeable standard is inconsistent with *Geiger.* A reasonably foreseeable injury is the result of recklessness, not a desire to cause the result. *Geiger* specifically excluded reckless conduct from willful injury, overruling *Pasek, Grey,* and *Posta* to the extent they held willful injuries included reasonably foreseeable injuries. See *In re Longley,* 235 B.R. 651, 656 (10th Cir. BAP 1999). This court rejects using reasonably foreseeable as the standard for willful injury.

■ Via Christi next argues that the standard for willful injury is whether the injury is substantially certain to occur. In *Geiger,* the Court compared the willful injury requirement to intentional torts. Restatement § 8A finds intent when "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A, comment b, p. 15 (1964). Although the Supreme Court referred only to "desiring the consequences", the Eighth Circuit decision it affirmed also quoted the substantial certainty language of § 8A. See *In re Geiger,* 113 F.3d 848, 852 (8th Cir.1997). The Tenth Circuit mentioned substantial certainty in the context of willful injury. *Longley,* 235 B.R. at 656.

The Supreme Court quoted § 8A comment a, but it did not mention comment b which reads:

> All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. *If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.* As the probability that the consequences will follow decreases, and *becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness....* As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence....

Restatement (Second) of Torts § 8A, comment b, p. 15 (1964) (Emphasis Added). The Restatement clearly distinguishes substantial certainty from the reckless standard rejected in *Geiger.* The Restatement equates substantial certainty that a result

will occur with desire to produce the result.

Several post-*Geiger* decisions have used the substantially certain standard to define the willful injury element of § 523(a)(6). See *Texas v. Walker*, 142 F.3d 813 (5th Cir.1998); *In re Slosberg*, 225 B.R. 9 (Bankr.D.Me.1998); *In re Kidd*, 219 B.R. 278 (Bankr.D.Mont.1998); *In re Williams*, 233 B.R. 398 (Bkrtcy.N.D.Ohio 1999). A Montana bankruptcy court expressed the need to use the substantial certainty standard, particularly in conversion cases such as this one, as follows:

> The problem with conversion cases ... is that rarely are the debtors acting out of a desire to injure the creditors, even though the injury to the creditor, although not desired, is almost always substantially certain to result from a debtor's actions.... Thus, the key to conversion cases is to analyze each set of circumstances on a case-by case basis to determine whether the conversion is in the nature of an intentional tort or whether the conversion is the result of a negligent or reckless tort—— but not willful and malicious.

*Id.* at 284. The substantial certainty standard is consistent with the holding in *Geiger* which requires a showing that the debtor intend the consequences of his act. This court adopts the position that intent to cause injury can be proven by substantial certainty.

■ The bankruptcy court did not discuss which standard was applied. Applying a substantial certainty standard, this court must determine whether the bankruptcy court committed clear error when it determined there was no willful injury. The burden is on the creditor to prove the conversion was both willful and malicious by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The bankruptcy court found that neither debtor knew of the assignment clause in the Admissions Consent Agreement. Mr. Budig would have signed the agreement either before surgery while he was experiencing chest pains or while he was recovering. Under such circumstances, it is very unlikely that Mr. Budig would remember signing such a document. Neither debtor knew an assignment could make the insurance money belong to the hospital.

The Budigs also did not understand the nature of a noncontract provider. Based on past experiences with BCBS, the debtors believed that BCBS would pay Via Christi directly. No effort was made by the hospital to explain the insurance payment procedure. Although the debtors received a bill from the hospital, the bill did not mention the assignment or any legal claim to the insurance proceeds beyond that of a general creditor.

■ Because the debtors did not know the money belonged to Via Christi, they could not have had the necessary intent to cause willful injury. Willful injury may be established by direct evidence of specific intent. *Longley*, 235 B.R. at 657. There is no evidence that the Budigs had specific intent to harm. · Willful injury may also be established indirectly "by evidence of both the debtor's knowledge of the creditors ... rights and the debtors's knowledge that the conduct will cause particularized injury." *Id.* There is no evidence that the debtors knew of the assignment. Even if the Budigs knew of the assignment, there is no evidence that they understood the nature of an assignment or that an assignment would give Via Christi rights in the insurance money. Unless the debtors knew of Via Christi's rights, they could not intend to injure Via Christi and could not have known with substantial certainty that injury would result from their actions.

The facts presented establish that the Budigs intentionally spent the insurance money which resulted in injury to Via Christi. However, the facts were insufficient to prove that the Budigs intended to injure Via Christi's rights in the insurance money. Via Christi failed to prove the

debtors action was willful and malicious by a preponderance of the evidence. It was not clear error for the bankruptcy court to find no willful and malicious intent to injure. Therefore, the bankruptcy court' judgment discharging the debt is affirmed.

**B. Did Via Christi have a property interest in the insurance money?**

Whether Via Christi had a property interest in the insurance money does not need to be decided. Absent a willful and malicious injury, the existence of a property interest is irrelevant.

## IV. CONCLUSION

Because there was no willful and malicious injury, the debt is dischargeable in bankruptcy.

**IT IS THEREFORE ORDERED BY THE COURT** that the order of the bankruptcy court entered August 10, 1998, discharging the debtors' debt to Via Christi Regional Medical Center, is hereby affirmed.