**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

In re: VALETA MAE ENGLEHART,

Debtor,

---

VIA CHRISTI REGIONAL
MEDICAL CENTER,

Plaintiff-Appellant,

v.

VALETA MAE ENGLEHART,

Defendant-Appellee.

No. 99-3339
(D.C. No. 98-CV-1322-MLB)
(D. Kan)

---

ORDER AND JUDGMENT   *

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

*        This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Via Christi Regional Medical Center, Inc. (Via Christi), plaintiff in this adversary proceeding, appeals from a district court order affirming a decision of the bankruptcy court granting debtor Valeta Mae Englehart discharge of a debt Via Christi contended was exempt from discharge under 11 U.S.C. § 523(a)(6). We review the bankruptcy court's legal determinations de novo and factual findings for clear error, mindful that "[i]t is especially important to be faithful to the clearly erroneous standard when the bankruptcy court's findings have been upheld by the district court." *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir. 1994). We affirm for the reasons stated below.

Under § 523(a)(6), a debtor is denied discharge from liabilities arising out of "willful and malicious injury" to another or another's property. The Supreme Court has held the quoted phrase encompasses "only acts done with the actual intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), *aff'g Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848 (8th Cir. 1997) (en banc). The burden of proving such intent, by a preponderance of the evidence, rests on the creditor asserting nondischargeability. *See Grogan v. Garner*, 498 U.S. 279, 289 (1991). Relying on *Geiger*, the bankruptcy court held that Via Christi failed to prove Ms. Englehart intended to injure Via Christi when insurance checks for

her husband's medical bills at Via Christi were received and cashed and the proceeds spent (by Ms. Englehart and/or her husband) elsewhere. The dispute in this case requires us to (1) identify the proper legal standard for determining actual intent consistent with *Geiger*, and (2) review the bankruptcy court's factual findings under that standard for clear error.

## Legal Standard for Intent under *Geiger*

The Eighth Circuit decision affirmed by the Supreme Court in *Geiger* relied on the Restatement (Second) of Torts § 8A (1965) to hold that the intent element of § 523(a)(6) requires that the debtor either "*desires* to cause [injury], or . . . *believes* that the [injury is] substantially certain to result." *Geiger*, 113 F.3d at 852 (quotation omitted and emphasis added). As the emphasized terms reflect, the Eighth Circuit adopted the Restatement's dual approach to intent in toto, i.e., while extending the concept to include undesired yet substantially certain injury, the court kept the focus of the inquiry subjective--on *the debtor's* belief in the substantial certainty of injury, not on a factfinder's independent view of the likelihood of injury. Indeed, the court took pains to explain the point, which was crucial to its holding in the case:

> In our case, there is no suggestion whatever that [the debtor] desired to cause the very serious consequences that [the creditor] suffered. . . . [T]herefore, . . . he would have to have believed that [the creditor] was substantially certain to suffer harm as a result of his actions. Although the district court opined that "expert

-3-

testimony" established that [the debtor's] conduct was "certain or substantially certain to cause [injury]," that is not enough. There is nothing in the record, so far as we can tell, that would support a finding that [the debtor] believed that it was substantially certain that [the creditor] would suffer harm. Indeed, [the debtor] testified that he believed [to the contrary] . . . .

This is an important distinction, one in fact that defines the boundary between intentional and unintentional torts: Even if [the debtor] should have believed that his [conduct] was substantially certain to produce serious harmful consequences, he would be guilty only of [negligence or recklessness], not of an intentional tort.

*Id.* at 852-53. While the Supreme Court's opinion in *Geiger* does not address the matter directly, the Court's affirmance of the Eighth Circuit's holding and evident approval of its use of the Restatement's treatment of intent, *see* 523 U.S. at 61-62, certainly support its approach. Further, the closest the Court came to defining intent for § 523(a)(6) purposes–characterizing "unintended" injury as "neither *desired* nor *in fact anticipated by the debtor*," *id.* at 62 (emphasis added)–used terms which map very closely onto the test adopted from the Restatement by the Eighth Circuit. In short, both the Restatement test and the quoted formulation articulated by the Supreme Court require courts "to focus on the subjective intent of the debtor to determine whether the injury was intended or unintended." *Branch Banking & Trust Co. v. Powers (In re Powers)*, 227 B.R. 73, 76 (Bankr. E. D. Va. 1998).

Since *Geiger* was decided, however, the lower courts have generated some confusion over the focus of the substantial certainty test. Some have followed the

subjective formulation adopted by the Eighth Circuit, looking specifically to the debtor's knowledge or belief regarding the consequences of his actions. The Sixth Circuit, for example, has stated that "the mere fact that [the debtor] should have known his decisions and actions put [the creditor] at risk is also insufficient to establish a 'willful and malicious injury' [under § 523(a)(6)]. He must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n.10 (6th Cir. 1999); *see also Via Christi Reg'l Med. Ctr. v. Budig (In re Budig)*, 240 B.R. 397, 400-401 (D. Kan. 1999) (looking to knowledge of debtor in applying substantial certainty test); *Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. B.A.P. 1999) (same).

Other courts, following the Fifth Circuit, have used an objective notion of substantial certainty, looking to the factfinder's assessment of the likelihood of injury instead of the debtor's knowledge or belief. *See Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603-04 (5th Cir. 1998); *Baldwin v. Kilpatrick (In re Baldwin)*, 245 B.R. 131, 136 (9th Cir. B.A.P. 2000); *Bowers v. Williams (In re Williams)*, 233 B.R. 398, 405 (Bankr. N. D. Ohio 1999). In our view, this second line of authority is not only at odds with the considerations discussed above in connection with both *Geiger* opinions, it is internally inconsistent. In support of an objective test, *Miller* recites what is actually a subjective

formulation from the literature on intentional tort: "'the *defendant acted with* . . . the substantial certainty that his action would injure the plaintiff.'" *Miller*, 156 F.3d at 604 (quoting Kenneth J. Vandevelde, *A History of Prima Facie Tort: The Origins of a General Theory of Intentional Tort*, 19 Hofstra L. Rev. 447 (1990)) (emphasis added). Similarly, in adopting *Miller*'s objective test, *Baldwin* indicates it is also following *Markowitz*, and even quotes the subjective Restatement formulation applied in *Markowtiz* (and *Geiger*) without ever noting the difference. *See Baldwin*, 245 B.R. at 136.

The error in this line of authority ultimately derives from the tacit premise that the only alternative to subjective desire is objective substantial certainty, *see Miller*, 156 F.3d at 605 (assuming subjective standard equates with "evil motive," requiring use of objective standard to distinguish substantial certainty). This assumption denies the purely subjective dichotomy of desire/belief actually set out in § 8A, and ignores the history of intent jurisprudence encapsulated in the pertinent illustration to that section. *See* Illustration 1 to § 8A ("A has no desire to injure C, but knows that his act is substantially certain to do so. C is injured by [A's act]. A is subject to liability to C for an intentional tort."). *Miller* fails to appreciate that the notion of subjective substantial certainty extends the scope of intent well beyond the compass of evil motive, without extending it to so far as to

-6-

include consequences entirely outside the actor's ken, which would be contrary to the whole thrust of the Supreme Court's decision in *Geiger*.

In sum, the "willful and malicious injury" exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur. When injury was "neither desired nor in fact anticipated by the debtor," it is outside the scope of the statute. *Geiger*, 523 U.S. at 62.

### Review of Bankruptcy Court's Findings

Ms. Englehart failed to pay her husband's substantial medical expenses at Via Christi, despite having received insurance proceeds for such expenses. After she filed a no-asset bankruptcy petition under Chapter 7, Via Christi brought this adversary proceeding to block discharge of the debt under § 523(a)(6). After an evidentiary hearing, the bankruptcy court held Via Christi had not shown that Ms. Englehart intended to cause financial injury to Via Christ as required by *Geiger*, which the Supreme Court had issued several months earlier. The essence of the bankruptcy court's decision is reflected in the following two passages, the first taken from its factual discussion, the second taken from its legal conclusions:

> Englehart testified that she was working twelve hour shifts and that her husband opened the mail and reviewed the bank statements. According to Englehart, she did not see the bank statements, the explanation of benefit forms, or the notices that the funds were to be paid to the hospital. She also testified that her husband used cocaine

and may have forged her signature on the checks since he had forged her name on government bonds and other documents in the past. Englehart admitted to signing and depositing one check for $8,410.00 because she thought that BCBS [the insurance company] would pay Via Christi directly. *Englehart did not understand that she was supposed to use the funds to pay the hospital.* Indeed, for some reason, some of the bill were paid directly by BCBS but the vast majority of the benefits were paid directly to Englehart. She testified that she would have used the money to pay Via Christi if she had known that the money was for that purpose. Instead, Englehart used the money from the two checks that BCBS sent after her husband's death to pay bills. Although she did not remember signing the other checks, Englehart testified that she was under tremendous stress at the time and she may have signed them.

. . . .

The record simply does not support the necessary finding that Englehart intended to harm Via Christi. While the Court recognizes that this type of situation is a major problem for Via Christi and all medical care providers, § 523(a)(6) is not the answer. At best, the facts here present a case for breach of contract. *There is simply no evidence of the debtor's state of mind at the time that she endorsed and deposited the checks.* The debtor has only minimal education beyond high school and apparently has no special knowledge of health care insurance. She was working long hours as a home health care aid and having to endure her husband's drug addiction at the same time. *There is no direct evidence of her state of mind through statements and there is no evidence from which the Court might infer it, such as the use of the proceeds to buy luxuries or exempt assets.*

Appellant's Appendix Vol. I at 102, 105 (emphasis added and reference to exhibit omitted).

The bankruptcy court rested its decision regarding Ms. Englehart's intent largely on its assessment of her credibility as a witness–a matter on which we owe it special deference. *See Dalton v. IRS*, 77 F.3d 1297, 1302 (10th Cir. 1996)

(quoting *Anderson v. City of Bessemer City*, 470 U. S. 564, 575 (1985)). After reviewing the record, we cannot say the bankruptcy court clearly erred in determining that Ms. Englehart lacked the actual intent to injure Via Christi. Further, while the bankruptcy court did not specifically address the question of substantial certainty, given the subjective character of that inquiry, the court's broad findings regarding the absence of evidence concerning state of mind suffice to settle that question as well. *See Budig*, 240 B.R. at 401 ("Unless the debtors knew of Via Christi's rights, they could not intend to injure Via Christi *and could not have known with substantial certainty that injury would result* from their actions." (emphasis added)).

Finally, Via Christi's continued insistence that it had a property interest in the insurance proceeds is simply immaterial to the dispositive issue in this case. As the bankruptcy court made clear, and the district court specifically reiterated, "[e]ven if the Court were to hold that . . . Via Christi [had] a property interest in the BCBS benefit checks, it has not proven that the debt is nondischargeable under § 523(a)(6)." Appellant's Appendix Vol. I at 105; *see also id.* at 120; *cf. Budig*, 240 B.R. at 401-02 (rejecting similar § 523(a)(6) claim by Via Christi, because, whatever its property rights in the insurance proceeds, "debtors did not know the money belonged to Via Christi"). *See generally Geiger*, 523 U.S.

at 63-64 (noting treatment of conversion claims under § 523(a)(6) is in accord with that of other claims of injury).

The judgment of the United States District Court for the District of Kansas affirming the decision of the bankruptcy court to grant debtor a discharge over plaintiff's objection is AFFIRMED.

Entered for the Court

Wade Brorby
Circuit Judge