In re Daniel F. MAU, Debtor.

Lincoln Land FS, Inc., Plaintiff,

v.

Daniel F. Mau, Defendant.

Bankruptcy No. 02–70353.
Adversary No. 02–7089.

United States Bankruptcy Court, C.D. Illinois.

May 28, 2003.

James W. Bruner, Springfield, IL, Jeffrey D. Richardson, Decatur, IL, for creditor.

Mark D. Theilen, Springfield, IL, for debtor.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

This matter came before the Court for trial on March 31, 2003, on the Plaintiff's Amended Complaint to Determine Dischargeability of Debt and Defendant's Answer thereto.

Since his graduation from college some fifteen years ago, Defendant has been a farmer. Defendant farmed with his brother Martin Mau in a loose partnership whereby they would use each other's equipment, aid each other in farming their respective ground, and purchase additional equipment, seed, fertilizer, and chemicals. In 1997, Mau Farms, Inc. was incorporated. Defendant and Martin Mau were each 50% shareholders. The only assets of Mau Farms, Inc. were seed, chemicals, fertilizer, and crops. Defendant and Martin Mau worked together up to and through 1999. In calendar year 2000, they discontinued their association and split their personal property and the assets of Mau Farms, Inc. The inequity in that split was satisfied

by a cash payment to Martin Mau. Defendant continued to farm in his personal capacity and as sole shareholder of Mau Farms, Inc.

During the relevant time period (January 1998 until the bankruptcy filing) Plaintiff and Defendant had an ongoing lender/borrower relationship. Plaintiff first extended credit to Mau Farms, Inc. in the year 2000.

In January, 1998, Defendant delivered a packet of financial materials to Plaintiff in connection with his request for an extension of credit from Plaintiff. As part of the 1998 packet, Defendant provided Plaintiff with a financial statement and an equipment list identifying certain items of equipment owned by Mau Farms, Inc. with a purported total value of $738,250.

In his testimony before this Court, Defendant admitted that the equipment list provided to Plaintiff as part of the 1998 packet indicating ownership by Mau Farms, Inc. was false. Defendant testified that the equipment was actually owned by Defendant and Martin Mau. However, Defendant also testified that included in the 1998 packet was a document entitled "Dan Mau Depreciation Schedule 1998", which clearly contradicted the representation on the equipment list that the equipment was owned by Mau Farms, Inc. Michael D. Stroup, the farm supply credit manager for Plaintiff, testified that the "Dan Mau Depreciation Schedule 1998" was not part of the 1998 packet provided to Plaintiff. Donald J. Krager, Vice–President of Bank & Trust Company of Chatham, testified that he received a financial packet from Defendant in 1998 and that the 1998 packet presented to his institution contained the "Dan Mau Depreciation Schedule 1998".

Plaintiff's credit policy did not require its borrowers to submit tax returns if the line of credit being sought was less than $250,000. Plaintiff loaned Defendant $125,000 in 1998. Therefore, no tax returns from Defendant or from Mau Farms, Inc. were requested or provided in 1998.

In January, 1999, Defendant again delivered a packet of financial materials to Plaintiff in connection with his request for an extension of credit. Defendant provided a similar financial statement and equipment list, which indicated that Mau Farms, Inc. owned certain equipment with a total value of $684,450. In his testimony, Defendant again conceded that the equipment list provided to Plaintiff indicating ownership by Mau Farms, Inc. was false, and again conceded that the equipment was actually owned by Defendant and his brother. However, Defendant also testified that included in the 1999 packet was a depreciation schedule which clearly contradicted the representation on the equipment list that the equipment was owned by Mau Farms, Inc. Mr. Stroup, the farm supply credit manager for Plaintiff, testified that the depreciation schedule was not part of the 1999 packet provided to Plaintiff. Plaintiff loaned Defendant $200,000 in 1999.

In January, 2000, Mau Farms, Inc. and Defendant provided a packet of financial materials to Plaintiff in connection with a request for an extension of credit. Mau Farms, Inc. was the applicant and Defendant was a co-applicant in connection with said extension of credit request. The 2000 packet contained an equipment list entitled, "Dan and Marty Mau Equipment List". The equipment list contained many of the same items of equipment listed on the equipment lists provided by Defendant in 1998 and 1999 as owned by Mau Farms, Inc.

In response to the change in equipment ownership as shown in the 2000 packet, Mr. Stroup and Defendant testified that, in

early 2000, they had conversations regarding the equipment ownership issue. Both testified that they discussed the fact that the shareholders of Mau Farms, Inc. were in the process of dividing the corporation and the equipment on the equipment lists. Additionally, Defendant advised Mr. Stroup that he would be the sole shareholder of Mau Farms, Inc. and would "be running everything through the corporation" as he proceeded with the 2000 crop year.

On April 12, 2000, Plaintiff and Mau Farms, Inc. entered into a line of credit note and security agreement in the amount of $200,000. Said line of credit note and security agreement was co-signed by Defendant.

On September 25, 2000, Plaintiff entered into a line of credit note and security agreement with Mau Farms, Inc. in the principal amount of $200,000. Said line of credit note and security agreement was co-signed by Defendant.

On January 29, 2002, Defendant filed his voluntary Chapter 7 petition in bankruptcy. On the same date, Mau Farms, Inc. also filed a Chapter 7 petition in bankruptcy. According to Plaintiff, as of March 31, 2003, Defendant was indebted to Plaintiff on the April and September, 2000, notes in the amount of $206,018.46 plus $50,436.28 in interest.

On May 10, 2002, Plaintiff filed a Complaint to Determine Dischargeability of Debt. The Complaint was amended on December 3, 2002. The Amended Complaint is in two counts. Count I is filed pursuant to 11 U.S.C. § 523(a)(2)(A). Count II is filed pursuant to 11 U.S.C. § 523(a)(6).

Section 523(a)(6) of the Bankruptcy Code provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt–

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

■ In order to be entitled to a determination of nondischargeability under § 523(a)(6), a plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant caused an injury; (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious. *In re Carlson*, 224 B.R. 659, 662 (Bankr.N.D.Ill.1998) (citation omitted), *aff'd* 2000 WL 226706 (N.D.Ill. 2000), *aff'd* 2001 WL 1313652 (7th Cir. 2001). "Willful" means intent to cause injury, not merely the commission of an intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Under *Geiger*, to prove nondischargeability of a debt under § 523(a)(6), a plaintiff must show that the defendant actually intended to harm him and not merely that the defendant acted intentionally and he was thus harmed. *Id.* at 61–62, 118 S.Ct. 974. The defendant must have intended the consequences of his act. *Id.* Injuries either negligently or recklessly inflicted to not come within the scope of § 523(a)(6). *Id.* at 64, 118 S.Ct. 974.

■ The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Subsequent decisions, however, have required either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts to establish the intent required in *Geiger*. *See In re Markowitz*, 190 F.3d 455 (6th Cir.1999); *In re Cox*, 243 B.R. 713, 719 (Bankr. N.D.Ill.2000); *In re Budig*, 240 B.R. 397 (D.Kan.1999); *In re Kidd*, 219 B.R. 278 (Bankr.D.Mont.1998).

■ To prove malice, a creditor must show that the debtor's willful, injurious conduct was undertaken without just cause or excuse. *In re Slosberg*, 225 B.R. 9, 21 (Bankr.D.Me.1998). *See also In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994) ("Malicious" means "in conscious disregard of one's duties or without just cause or excuse".)

■ The facts in this case, even when viewed in a light most favorable of the Plaintiff, do not give rise to a finding of nondischargeability under § 523(a)(6). This is simply not a instance where the injuries caused by any purported misrepresentations by the Defendant could be deemed willful or malicious, especially under the Supreme Court's most recent edification in *Geiger, supra.* At the most, Defendant's presentation to Plaintiff of inaccurate financial papers might be considered reckless, and that is insufficient to meet Plaintiff's burden. Accordingly, Count II of Plaintiff's Amended Complaint is dismissed.

As for Count I, Plaintiff has alleged a violation of 11 U.S.C. § 523(a)(2)(A):

Section 523(a)(2)(A) of the Bankruptcy Code provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition(.)

11 U.S.C. § 523(a)(2)(A).

In order to prove a case under this provision, courts have traditionally required a plaintiff to prove by a preponderance of the evidence that (i) the debtor made false statements which he knew to be false, or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (ii) the debtor possessed the requisite *scienter*, i.e. he actually intended to deceive the plaintiff, and (iii) to his detriment, the plaintiff justifiably relied on the representations. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *In re Mayer*, 51 F.3d 670, 673 (7th Cir.1995), *cert. denied* 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995); *In re Sheridan*, 57 F.3d 627, 635 (7th Cir.1995); *In re Scarlata*, 979 F.2d 521, 525 (7th Cir.1992); *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, the Seventh Circuit has recently held that "actual fraud" is not limited to misrepresentation, but may encompass " 'any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another.' " *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir.2000) *quoting* 4 Lawrence P. King, *Collier on Bankruptcy*, ¶ 523.08(1)(e), p. 523–45 (15th ed. Revised, 2000).

■ In this case, the only possible evidentiary basis for a finding of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) would be Defendant's representation to Mr. Stroup that he intended "to run everything through the corporation".[1]

---

1. The vast majority of the evidence presented at trial related to statements in writing respecting Defendants's financial condition, i.e. the packets of financial materials including the equipment lists, depreciation schedules, financial statements, etc. The dischargeability of debts arising from such writings is governed by 11 U.S.C. § 523(a)(2)(B). However, Count I of Plaintiff's Complaint is brought under 11 U.S.C. § 523(a)(2)(A) rather than 11 U.S.C. § 523(a)(2)(B). Accordingly, the Court will limit its analysis to § 523(a)(2)(A).

To state that Defendant's representation could be subject to interpretation is to state the blindingly obvious. "Run everything through the corporation" is not the same as "The corporation is and will be the sole and exclusive owner of all equipment I use in my farming operation." Thus, Plaintiff's contention that the statement was false is dubious at best.

In order to prevail under § 523(a)(2)(A), Plaintiff must also prove that the statement was made with the intent to deceive Plaintiff. The evidence and the testimony fall far short of proving this.

The Court found Mr. Krager's testimony that he was given a copy of the "Mau Depreciation Schedule 1998" at the time Defendant applied for credit at Bank & Trust Company of Chatham credible. In addition, the Court found Defendant's testimony that he believed that a copy of the "Mau Depreciation Schedule 1998" was in the 1998 packet of financial information given to Mr. Stroup to be credible as well. Finally, the Court found Defendant's testimony that he believed that a copy of a contradictory depreciation schedule was in the 1999 packet of financial information given to Mr. Stroup to be likewise credible. In making this finding, the Court does not intend to suggest by inference that it found Mr. Stroup's testimony that he did not receive the documents in question in 1998 and 1999 to lack credibility. However, if there had been truly an intent to deceive, i.e. an intent on Defendant's part to mislead Plaintiff and its representatives into believing that Mau Farms, Inc. owned the equipment when it actually did not, then the question arises why Defendant ever produced a document entitled "Mau Depreciation Schedule 1998" or the equipment list as it appeared in the January, 2000 financial packet? If Defendant had an intent to deceive, it would certainly have made more sense for the Defendant to continue in that deception rather than attempt to correct it or produce and publish documents which explicitly contradicted it.

Even if the statement about running everything through the corporation were false, and even if Defendant made the statement with an intent to deceive Plaintiff, any reliance upon the statement by the Plaintiff or its representatives was unjustifiable.

In his testimony, Mr. Stroup acknowledged that the financial information received from farmers would often be blended, inaccurate, and contain omissions and contradictory information. Mr. Stroup also acknowledged that the information contained in the 1998 and 1999 financial packets supplied by Defendant was blended, i.e. it contained information on both the Defendant personally and on Mau Farms, Inc.

On the many occasions when he was furnished financial information which was blended, incomplete, or contradictory, Mr. Stroup testified that further inquiry was required to determine the true nature of the financial information and its accuracy. In spite of this, Mr. Stroup never requested tax returns from Defendant and never made independent inquiry to determine the true ownership of the subject equipment.

Parenthetically, the Court finds no fault with Plaintiff's lending practices of not requiring tax returns for loans under a certain threshold amount. However, once the ownership issue arose and ambiguity concerning the ownership surfaced, it would have been incumbent upon Plaintiff to look into the matter. Plaintiff's failure to do under these circumstances makes reliance on Defendant's purportedly false statement unjustifiable.

For the reasons set forth above, Plaintiff's Complaint to Determine Dischargeability of Debt is dismissed. The debt subject to this adversary proceeding is dischargeable in Debtor's bankruptcy.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.