**In re Patrick J. BUTLER, Debtor.**

**Prairie Eye Center, Plaintiff,**

v.

**Patrick J. Butler, Defendant.**

**Bankruptcy No. 01–70978.
Adversary No. 01–7105.**

United States Bankruptcy Court,
C.D. Illinois.

Sept. 3, 2003.

James R. Enlow, Edward R. Green, Springfield, IL, Kristin K. Going, Cleveland, OH, Jeffrey L. Goodman, BalaCynwyd, PA, Thomas J. Holthus, San Diego, CA, Arnold G. Kaplan, Chicago, IL, Wesley T. Kozeny, St. Louis, MO, Steven L. Nelson, Rock Island, IL, for creditor.

John P. Leahy, Springfield, IL, for debtor.

### OPINION

LARRY L. LESSEN, Bankruptcy Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. The issue is whether a debt—a civil judgment in favor of Plaintiff and against the Debtor in the amount of $1,819,-132.34—arose as a result of a willful and malicious injury, thereby rendering the debt nondischargeable under 11 U.S.C. § 523(a)(6).

Patrick J. Butler ("Debtor") is an ophthalmologist with a specialty in the treatment of glaucoma. In 1994, Debtor came to Springfield, Illinois and started a clinical practice at the Southern Illinois University School of Medicine ("SIU"). Debtor practiced with optometrist Larry Williams, ophthalmologist Robert Posegate, and others.

In February, 1997, Debtor entered into an Employment Agreement with Centrum Eye Center, Ltd., which was owned by Dr. Sandra Yeh. Later that year, Centrum Eye Center, Ltd. changed its name to Prairie Eye Center. The parties executed a second agreement identical to the February, 1997, contract except for one modification reflecting changes to Debtor's health care benefits. In July, 1997, Debtor began his employment with Plaintiff.

The Employment Agreement contains the following covenant not to compete provision:

11, *COVENANT NOT TO COMPETE:* Upon the expiration or termination of this Agreement, Employee covenants that he will not for a period of two (2) years after expiration or termination, engage in, be associated with or have a financial interest in any medical practice or optometric practice, either directly or indirectly, as employer, employee, principal, agent, independent contractor, consultant, partner, stockholder, creditor in any other capacity, at any location(s) within Sangamon County, Illinois and within ten (10) miles of Hillsboro, Illinois and ten (10) miles of any branch office of Employer. Employee agrees that upon his breach or violation of the foregoing provisions of this paragraph, Employer shall be entitled, as a matter of right, to obtain relief in any court of competent jurisdiction enjoining such breach or violation, and recover from Employee all its attorneys' fees, in addition to all other remedies provided at law, in equity or under this Agreement. Employee acknowledges that Employer has a valid, protectable

interest in its medical and optometric practice, and that the duration and geographic scope of this covenant are reasonable to protect that interest. Provided, however, if the period of time or area herein specified should be adjudged unreasonable in any court proceeding, then the period of time shall be reduced by such number of months and/or the area shall be reduced by such number of miles (or fraction thereof) as is deemed necessary to allow this Covenant to be enforced in such area and during such period of time as determined to be reasonable. In the event any violation hereunder is determined, the period of noncompetition shall be extended by a period of time equal to that period beginning when such violation commenced and ending when the activities constituting such violation shall have terminated. This Covenant not to Compete shall be construed as an agreement independent of any other promise herein, and the existence of any claims or cause of action of Employee against Employer, whether predicated upon this Agreement or otherwise, shall not constitute a defense to its enforcement.

On December 9, 1998, Debtor's attorney hand-delivered a letter to Dr. Yeh informing her that Debtor was terminating his employment with Plaintiff effective February 12, 1999.

On January 6, 1999, Dr. Robert Posegate and Dr. Larry Williams opened an optometric office in Springfield called Sangamon Eye Associates. Said office was approximately two miles from Plaintiff. On January 12, 1999, Debtor began telling his patients that he would be leaving Plaintiff and they should call him to make follow-up appointments. Debtor also distributed business cards to these patients indicating that he would be practicing at the same address and telephone number as Sangamon Eye Associates.

On January 12, 1999, Plaintiff filed a complaint in the Circuit Court of Sangamon County, Illinois seeking declaratory relief, preliminary injunctive relief, and permanent injunctive relief. Two days later, the trial court entered an order granting a preliminary injunction in favor of Plaintiff except as to those patients who had a pre-existing relationship with Dr. Butler, i.e. patients of his previous practice at SIU.

Plaintiff appealed the initial preliminary injunction order, contending that it should apply to all patients. While the appeal was pending, Plaintiff purportedly discovered that Debtor had been violating the preliminary injunction.

On February 10, 1999, Plaintiff filed a Motion to Show Cause, contending that Debtor had violated the preliminary injunction by continuing to solicit patients of Plaintiff with whom he had no prior relationship.

On February 17, 1999, Plaintiff filed a Motion for Clarification of the trial court's preliminary injunction order. On February 29, 1999, the trial court clarified the order.

On March 29, 1999, the trial court held a hearing on Plaintiff's Motion for Rule to Show Cause. The trial court found Debtor guilty of indirect civil contempt.

On June 11, 1999, the Appellate Court of Illinois, Fourth District, reversed with directions to modify the preliminary injunction to enforce the covenant in its entirety, i.e. to include those patients with whom Debtor had a prior relationship at SIU. *See Prairie Eye Center, Ltd. v. Butler,* 305 Ill.App.3d 442, 713 N.E.2d 610 (4th Dist. 1999). Accordingly, on July 14, 1999, the trial court entered its Modified Order for

Preliminary Injunction, which states in part as follows:

IT IS HEREBY ORDERED:

A preliminary injunction is hereby granted in this cause enjoining [Debtor] from engaging in:

1) the practice of medicine and/or ophthalmology at any location within Springfield, Hillsboro, Girard, Rushville, Beardstown, Lincoln and Decatur, Illinois;

2) engaging in, associating with, or having a financial interest in any medical practice or ophthalmological practice, either directly or indirectly, as employer, employee, principal, agent, independent contractor, consultant, partner, stockholder, creditor, or in any other capacity at any location within Sangamon County, Illinois or within 10 miles of Plaintiff's branch offices in Springfield, Hillsboro, Girard, Rushville, Beardstown, Lincoln and Decatur, Illinois;

3) this preliminary injunction shall be in effect until further order of this Court.

On March 16, 2000, Plaintiff filed a second Motion to Show Cause and Request for Sanctions. The Motion alleged that, despite the modified preliminary injunction, Debtor continued to hold himself out as a physician in Springfield at Sangamon Eye Associates and actively solicited and treated patients not permitted by the trial court's revised Order.

On October 10, 2000, the trial court commenced a trial and a hearing on the second Motion to Show Cause and Request for Sanctions. The bench trial lasted approximately three weeks and included over 40 witnesses.

On November 30, 2000, the trial judge, Honorable Dennis Schwartz, issued a docket entry wherein he found that the "Plaintiff was damaged by the Defendant's intentional and repeated violations of the covenant not to compete". Judge Schwartz entered judgment against Debtor in the amount of $1,654,700 plus attorneys fees of $164,432.35, for a total of $1,819,132.34. Judge Schwartz also found that the "Defendant violated the modified preliminary injunction intentionally and repeatedly and that he is found to be in willful Contempt of said Order of this Court(.)" As to the contempt, Judge Schwartz fined Debtor the sum of $10,000.

On the same date, Judge Schwartz entered a seven-page Judgment Order. Among other things, Judge Schwartz found:

Subsequent to this court's order of July 14, 1999, [Debtor] has actively solicited patients in Sangamon County and has helped to provide transportation to those patients to areas outside of Sangamon County. Through his association with Sangamon Eye Associates, [Debtor] has repeatedly violated this court's preliminary injunction and continues to do so.

During the period March 1999 through the present time, [Debtor] has violated the covenant not to compete by practicing ophthalmology in association with Family Eye Care, an optometry practice with its principal place of business in Hillsboro, Illinois(.) . . .

In violation of the terms of the covenant not to compete, [Debtor] actively practiced and saw patients in Sangamon County from February of 1999 until August of 1999.

Since January 14, 1999, [Debtor] has violated the terms of Judge Appleton's Order of January 14, 1999, by seeing patients in Sangamon County, Illinois, which he was not permitted to see by the terms of that Order.

On April 16, 2002, the Appellate Court of Illinois, Fourth District, affirmed the trial court's judgment in its entirety. *See Prairie Eye Center, Ltd. v. Butler,* 329 Ill.App.3d 293, 768 N.E.2d 414, 263 Ill.Dec. 654 (2002). On December 5, 2002, the Illinois Supreme Court denied Debtor's Petition for Leave to Appeal. On December 31, 2002, the Illinois Supreme Court denied Debtor's Motion for Leave to File a Motion for Reconsideration of the Order denying Petition for Leave to Appeal. Mandate was then issued and the judgment became final.

Debtor filed his Chapter 11 petition in bankruptcy on March 15, 2001—after the trial court's judgment had been entered and while the appeal was pending. Plaintiff filed its adversary complaint on June 14, 2001. This Court lifted the automatic stay to permit the parties to proceed with the appeal. Following the conclusion of the appellate process, Plaintiff and the Debtor have filed cross-motions for summary judgment.

In order to prevail on a motion for summary judgment, Plaintiff must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) states in part as follows:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *See also Dugan v. Smerwick Sewerage Co.,* 142 F.3d 398, 402 (7th Cir.1998). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute.

*Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All reasonable inference drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1032 (7th Cir.1998). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990).

Section 523(a)(6) of the Bankruptcy Code provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

In order to be entitled to a determination of nondischargeability under § 523(a)(6), a plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant caused an injury; (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious. *In re Carlson,* 224 B.R. 659, 662 (Bankr.N.D.Ill.1998) (citation omitted), *aff'd* 2000 WL 226706 (N.D.Ill. 2000), *aff'd* 2001 WL 1313652 (7th Cir. 2001). "Willful" means intent to cause injury, not merely the commission of an intentional act that leads to injury. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct.

974, 140 L.Ed.2d 90 (1998). Under *Geiger*, to prove nondischargeability of a debt under § 523(a)(6), a plaintiff must show that the defendant actually intended to harm him and not merely that the defendant acted intentionally and he was thus harmed. *Id.* at 61–62, 118 S.Ct. 974. The defendant must have intended the consequences of his act. *Id.* Injuries either negligently or recklessly inflicted to not come within the scope of § 523(a)(6). *Id.* at 64, 118 S.Ct. 974. An intentional breach of contract which is substantially certain to cause injury may give rise to a finding of nondischargeability under § 523(a)(6). *In re Williams*, 337 F.3d 504, 510 (5th Cir. 2003).

■ The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Subsequent decisions, however, have required either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts to establish the intent required in *Geiger*. *See In re Markowitz*, 190 F.3d 455 (6th Cir.1999); *In re Cox*, 243 B.R. 713, 719 (Bankr. N.D.Ill.2000); *In re Budig*, 240 B.R. 397 (D.Kan.1999); *In re Kidd*, 219 B.R. 278 (Bankr.D.Mont.1998).

To prove malice, a creditor must show that the debtor's willful, injurious conduct was undertaken without just cause or excuse. *In re Slosberg*, 225 B.R. 9, 21 (Bankr.D.Me.1998). *See also In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994) ("Malicious" means "in conscious disregard of one's duties or without just cause or excuse".)

■ The doctrine of collateral estoppel (issue preclusion) applies to adversary proceedings brought pursuant to 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 284, n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under this doctrine, issues deter-

mined in a prior state court proceeding may not be re-litigated in the bankruptcy court. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir.1998); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994). However, the bankruptcy court has exclusive jurisdiction to determine the dischargeability of the debts. *See* 11 U.S.C. § 523(c)(1).

■ In the Seventh Circuit, four requirements must be met in order for collateral estoppel to apply:

1. the issue sought to be precluded must be the same as that involved in the prior litigation;

2. the issue must have been actually litigated;

3. the determination of the issue must have been essential to the final judgment; and

4. the party against whom estoppel is invoked must be fully represented in the prior action.

*Meyer v. Rigdon, supra,* 36 F.3d at 1379; *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987).

■ A bankruptcy court is required to give an Illinois state court judgments the same full faith and credit as they have by law or usage in the Illinois courts. 28 U.S.C. § 1738. Accordingly, this Court is required to give preclusive effect to Illinois state court judgments whenever the Illinois courts would do so. *In re Winston,* 114 B.R. 566, 571 (Bankr.N.D.Ill.1990).

■ In this case, the first requirement—that the issue was decided in prior litigation—has been met. Judge Schwartz found that the "Plaintiff was damaged by the [Debtor's] intentional and repeated violations of the covenant not to compete". Judge Schwartz also found the Debtor in "willful contempt" for failing to comply with the state court's injunction. If a state

court finds that a debtor intentionally injured a creditor, the bankruptcy court is required under the doctrine of collateral estoppel to hold the debt nondischargeable. *In re Sarff,* 242 B.R. 620, 624 (6th Cir. BAP 2000), *citing In re Abbo,* 168 F.3d 930, 932 (6th Cir.1999). Thus, the state court's factual findings sustain a finding of nondischargeability under 11 U.S.C. § 523(a)(6).

The second requirement—that the issue was actually litigated—has also been satisfied. The state court held a lengthy trial at which over 40 witnesses testified. The judgment of the trial court was affirmed on appeal. Debtor has certainly had his day in court.

The third requirement—that the issue must have been essential to the final judgment—has similarly been met. The factual findings which were decided and necessary for Judge Schwartz to find that Debtor had breached the Employment Agreement and that he was in willful contempt are the same predicate facts which are necessary to support a finding by this Court that the debt arose as a result of a willful and malicious injury.

Among many, many other things, Judge Schwartz found that the Debtor repeatedly solicited and treated patients in violation of the covenant not to compete and the injunctions issued by the state court. Debtor freely admitted that, while still employed by Plaintiff, he handed out business cards to patients with the address of Sangamon Eye Associates. Debtor admitted that he kept his name on a sign located in front of Sangamon Eye Associates for almost eighteen months after the trial court issued its modified preliminary injunction and that he continued to advertise in and around the city of Springfield.

The willfulness and malice required by 11 U.S.C. § 523(a)(6) is demonstrated by Judge Schwartz' finding that Debtor repeatedly and purposefully engaged in acts which he knew to be in violation of the covenant not to compete and the trial court's preliminary injunction orders. The trial court specifically found that Debtor, "in violation of the covenant not to compete, used a variety of methods to persuade and insure (sic) that these patients would not stay with his former employer(.)"

Finally, the last element of collateral estoppel—that the party against whom the doctrine is asserted was fully represented in the prior proceeding—has been satisfied. Debtor was represented throughout the state court proceedings by attorney James P. Baker, a qualified and experienced attorney licensed to practice in the state of Illinois. The judgment was entered following a trial at which the Debtor was represented by counsel and had a full and fair opportunity to litigate. He had his day in court and he lost on the issues. He took an appeal and lost, and the Illinois Supreme Court declined to hear the case. The case should not be re-litigated in this Court.

Inasmuch as all of the elements mandating collateral estoppel are present, Plaintiff's Motion for Summary Judgment should be granted, and the debt owed by Debtor to Plaintiff pursuant to the state court judgment is nondischargeable under 11 U.S.C. § 523(a)(6).

■ Even if the Court were to have concluded that the state court judgment is not entitled to collateral estoppel effect, the Plaintiff's Motion for Summary Judgment should nonetheless be granted for reasons set forth in the record before this Court and articulated throughout this Opinion. In reaching this conclusion, the Court has examined the underlying facts in a light most favorable to the Debtor and has failed to find any material fact in

dispute or any valid defense for Debtor's conduct.

In his proffer that the judgment should be deemed dischargeable as a matter of law, Debtor explains his rationale why his actions were neither willful nor malicious in the following manner:

There is no evidence that Dr. Butler engaged in conduct that was deliberate and intended to harm (Plaintiff). In fact, the evidence is to the contrary. Dr. Butler's intent was twofold. First, he intended to provide quality healthcare to his patients....

Second, Dr. Butler had to provide for the welfare of two (2) families....

Dr. Butler's motivations in maintaining a meaningful medical practice were clearly his need to provide for the welfare of two (2) families, in addition to adequately protecting his patients' health....

Defendant's Memorandum of Law, pp. 21–22.

Debtor may dispute that he subjectively intended to injure Plaintiff by intentionally violating the covenant not to compete, thereby breaching the Employment Contract. However, Debtor does not (and could not) seriously dispute the fact that he had subjective knowledge that injury to Plaintiff was substantially certain to result from his intentional acts. He clearly knew that violating the covenant not to compete would cause financial harm to Plaintiff, yet he knowingly violated the covenant anyway. As indicated above and as established by precedent, that is all that is required to meet the standard of nondischargeability set forth in *Geiger*. *See In re Markowitz, supra; In re Cox, supra; In re Budig, supra; In re Kidd, supra. See also In re Long*, 774 F.2d 875, 881 (8th Cir.1985) (conduct which is targeted at a creditor at least in the sense that the conduct is certain or almost certain to cause financial harm is "malicious" as required by 11 U.S.C. § 523(a)(6)).

Debtor evidently (and mistakenly) deems his professed altruism toward his patients and toward his families as a satisfactory legal defense. Irrespective of his motivation for intentionally and repeatedly breaching the Employment Agreement, Debtor was fully cognizant of and intended the harm he caused Plaintiff, and he had no just cause or excuse—despite his protestations to the contrary—for causing injury to Plaintiff. Accordingly, it is clear from the record and from the Debtor's admissions that the subject debt arose from a willful and malicious injury and that the debt is, therefore, nondischargeable under 11 U.S.C. § 523(a)(6).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment be and is hereby allowed, and the debt in the amount of $1,819,132.34 plus interest be and is hereby declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

IT IS FURTHER ORDERED that Debtor's Motion for Summary Judgment be and is hereby denied.