Dan ZANDER, et al., Appellants,

v.

STATE of Minnesota, Respondent.

No. A04–2393.

Court of Appeals of Minnesota.

Sept. 20, 2005.

Paul R. Haik, Krebsbach & Haik, Ltd., Minneapolis, MN, for appellants.

Mike Hatch, Attorney General, Lisa A. Crum, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by DIETZEN, Presiding Judge; STONEBURNER, Judge; and HUDSON, Judge.

## OPINION

DIETZEN, Judge.

Appellants filed claims in district court under the Minnesota Environmental Rights Act (MERA), Minn.Stat. §§ 116B.01–116B.13 (2004), alleging violations resulting from a state highway expansion project. The district court dismissed appellants' claims by granting respondent's motion for summary judgment. Because appellant has not presented genuine issues of material fact sufficient to support a prima facie case under MERA, we affirm.

## FACTS

Appellants Dan Zander and John Zander own property in Waseca County, a portion of which lies within the planned construction area for the state Trunk Highway 14 (TH 14) expansion project. Due to safety concerns, TH 14, located between Mankato and Owatonna, is being expanded from two to four lanes. Appellants object to the portion of the project that will affect their property.

The planning process for the TH 14 expansion began in 1992. Environmental review of the project consisted of a draft environmental impact statement (DEIS) and a final environmental impact statement (FEIS), approval of a wetland-replacement plan by the Minnesota Board of Water & Soil Resources (BWSR), and a permit application approved by the United States Army Corps of Engineers.

*Environmental–Impact Statements*

To begin the environmental-review process, the Minnesota Department of Transportation (MnDOT) defined the purpose and need for the project and developed a "scoping document" to evaluate various alternative alignments. MnDOT considered the environmental, historical, social, land-

use, and economic factors for each alternative. The various alternatives were reduced to four, which were evaluated in the DEIS. The transportation commissioner selected a preferred alignment, and MnDOT prepared and released the FEIS for public comment. This preferred alignment runs through appellants' property and requires condemnation of a portion of their property. That portion of property includes about seven acres of wetlands that would be filled under the project.

Following public comment, MnDOT approved the preferred alignment on June 7, 1999. The Federal Highway Administration approved the preferred alignment and the FEIS on July 7, 1999. The United States Environmental Protection Agency also concurred and determined that the preferred alignment was the "Only Practicable Alternative."

The preferred alignment runs adjacent to the Dakota Minnesota & Eastern (DM & E) railroad. After the preferred alignment was approved, MnDOT discovered that DM & E was planning to build a switchyard in the preferred-alignment area. MnDOT then considered an alternative plan that would have avoided the switchyard. But when MnDOT learned that DM & E had abandoned the switchyard plan, MnDOT reverted to the preferred alignment because the alignment would have a comparatively modest impact on adjoining landowners and public safety, and more modest loss of agricultural land. Appellants did not challenge the adequacy of the FEIS following its release, and it became a final document.

*BWSR Approval of Wetland–Replacement Plan*

Because the preferred alignment required filling about seven acres of wetlands on appellants' property, MnDOT was required to develop and receive approval for a wetland-replacement plan from its Office of Environmental Services. The replacement plan provided for replacement wetlands at a two-to-one ratio in the same county and watershed for the approximately seven acres of wetlands that would be filled for the project. As required by state regulations, a Technical Evaluation Panel (TEP) of representatives of BWSR, MnDOT, and Waseca County reviewed the replacement plan and found that it met the statutory requirements for replacement under the Wetland Conservation Act. *See* Minn.Stat. § 103G.222, subd. 1(a) (2004) (providing that wetlands drained or filled must be replaced by restoring or creating other wetland areas). The TEP concluded that the replacement wetlands would be of higher quality than those affected on appellants' property and therefore, recommended approval.

Appellants challenged the TEP's decision by petitioning BWSR to reject the wetland-replacement plan. Appellants' objection to the replacement plan was based on an ecologist's report who suspected that an endangered plant species, Sullivant's milkweed, might exist on the property, but could not make that determination with certainty because he inspected the property late in the growing season. The report contradicted a previous survey by the Minnesota Department of Natural Resources (DNR), as well as a search of the Minnesota Natural Heritage Database, that had not revealed the existence of any endangered or threatened plant species in the area. Consequently, appellants urged MnDOT to reconsider the DM & E alternative, rather than the preferred alignment, due to the concern over the possible impact on endangered or threatened plant species.

MnDOT again compared the preferred alignment and the DM & E alternative alignment. MnDOT concluded that although the DM & E alternative did not

affect any wetlands, it was more environmentally damaging because more acres of farmland would be impacted, farmers would have to travel farther to reach their fields, total expenses would increase, more railroad crossings would be necessary, and two additional curves on TH 14 would increase safety risks. MnDOT's Office of Environmental Services approved the wetland-replacement plan and issued findings of fact and conclusions on December 31, 2003.

Based on its review of the administrative record, BWSR denied the petition without a hearing, concluding that the petition lacked merit and was initiated solely for the purpose of delay. Appellants brought a writ of certiorari to this court, which affirmed the decision of BWSR.[1] *In re Wetland Conservation Act,* No. A04–314, 2004 WL 2857357 (Minn.App. Dec.14, 2004).

*Corps of Engineers Permit Application*

MnDOT applied to the United States Army Corps of Engineers (Corps) for a permit to fill the wetlands that would be affected by the project area pursuant to the requirements of the Clean Water Act (CWA), 33 U.S.C. § 1344 (2000). On May 19, 2004, the Corps held a hearing regarding MnDOT's request for a permit for the project. In late May 2004, the Corps' Senior Ecologist, Steve Eggers, inspected the project area. On June 4, 2004, Eggers sent an e-mail to DNR and MnDOT staff, informing them that he had observed clumps of "very robust" valerian, a state-listed threatened plant species, near, but not within, MnDOT's right-of-way for the project. On June 10, Eggers sent another e-mail to Corps' staff, indicating that it was likely that the valerian plants would be destroyed by construction activities and

that direct impact on the valerian plants could be prevented by using the DM & E alternative. He also stated that the adverse impacts could be mitigated by using fences to protect the valerian plants during construction.

On June 17, 2004, in response to Eggers' comments, MnDOT and DNR staff performed a survey of plant species on the project site. These officials confirmed that no Sullivant's milkweed or valerian plants were inside the right-of-way but valerian plants did exist outside of, but close to, the right-of-way. The officials opined that the valerian plants would not be affected by construction activities. The DNR advised MnDOT that because no threatened species existed inside of the right-of-way, no DNR permit was required because no threatened species would be taken. MnDOT volunteered to protect the valerian plants from any construction impacts with use of a fence and berm. On June 18, 2004, the Corps issued a permit to MnDOT, stating that all requirements of the CWA had been met.

*Subsequent Legal Challenges*

In addition to appellants' BWSR challenge, appellants initiated other simultaneous legal challenges to stop the project. When MnDOT condemned a portion of appellants' property using the quick-take provision in Minn.Stat. § 117.042 (2004), appellants objected to the condemnation, challenging the public purpose and necessity of the project. At the condemnation-case evidentiary hearing, Robert Johnson, a senior botanist with MnDOT's Office of Environmental Services, testified that the wetlands on appellants' property were badly degraded from an ecological standpoint. After the hearing, the district court con-

---

1. This court denied appellants' motion to combine their BWSR challenge with an appeal of the condemnation of their property. *In the Matter of the Wetland Conservation Act Appeal,* Nos. A04–314 & A04–496, 2004 WL 2857357 (Minn.App. Apr. 27, 2004).

cluded that appellants had not established the existence of endangered or threatened plants and approved MnDOT's quick-take petition. Appellants challenged the decision of the district court granting the quick-take, and this court affirmed. *State v. Zander*, No. A04–496, 2004 WL 2857501 (Minn.App. Dec. 14, 2004).

Appellants also moved for injunctive relief to suspend construction of the project on their property. The district court denied injunctive relief, and this court affirmed. *Zander v. State*, No. A04–1215 (Minn.App. July 29, 2004) (order). Appellants later voluntarily dismissed that appeal. *Zander v. State*, No. A04–1215 (Minn.App. Sept. 2, 2004) (order).

Subsequently, appellants filed the action that is the subject of this appeal, alleging that the project violates the Minnesota Environmental Rights Act (MERA), Minn. Stat. §§ 116B.01–.13 (2004). Respondent State of Minnesota moved for summary judgment, which the district court granted, finding that appellants had failed to meet their burden to present a prima facie case under MERA and that there were no genuine issues of material fact for trial. After the district court's order, appellants moved for amended findings, but the district court denied their motion. Appellants now challenge the district court's grant of respondent's motion for summary judgment and the denial of their motion for amended findings.

## ISSUES

I. Did the district court err by granting respondent's motion for summary judgment of appellants' claims under Minnesota Environmental Rights Act (MERA), Minn.Stat. §§ 116B.01–.13 (2004)?

II. Did the district court err by making credibility and weight-of-the-evidence determinations on a motion for summary judgment?

III. Did the district court abuse its discretion by denying appellants' motion for amended findings?

## ANALYSIS

### I.

*MERA Claims*

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits submitted "show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court asks whether: (1) there are any genuine issues of material fact, and (2) the lower court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The reviewing court must view the evidence in the light most favorable to the nonmoving party. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 345 (Minn.2003).

Under the Minnesota Environmental Rights Act (MERA), any person residing within the state may maintain a civil action for declaratory or injunctive relief against any other person for the protection of the air, water, land, or other natural resources within the state from "pollution, impairment or destruction." Minn. Stat. § 116B.03, subd. 1 (2004). "Natural resources" under MERA include "all mineral, animal, botanical, air, water, land, timber, soil, quietude, recreational and historical resources." Minn.Stat. § 116B.02, subd. 4 (2004). The phrase "pollution, impairment, or destruction" is defined, in relevant part, to be: (1) "any conduct by any person which violates, or is likely to violate," any environmental quality standard, limitation, rule, order, license, stipu-

lation agreement, or permit of the state, or (2) "any conduct which materially adversely affects or is likely to materially adversely affect the environment." *Id.,* subd. 5.

■■■ Appellate courts review de novo the district court's conclusions of law in a MERA case. *State ex rel. Fort Snelling State Park Ass'n v. Minneapolis Park & Rec. Bd.,* 673 N.W.2d 169, 174 (Minn.App. 2003), *review denied* (Minn. Mar. 16, 2004). We review findings of fact under the clearly erroneous standard. *Id.*

Appellants assert that the project involves two protected natural resources, endangered valerian plants and wetlands, and that the project will cause the pollution, impairment, or destruction of these natural resources. Appellants argue that the record contains genuine issues of material fact that the project violates MERA because: (1) the project involves conduct that violates, or is likely to violate, an environmental-quality standard, limitation, rule, order, license, stipulation agreement or permit of the state; and (2) the project involves conduct that will, or is likely to, materially, adversely affect the environment. *See* Minn.Stat. § 116B.02, subd. 5 (2004).

### A. Violation of Environmental–Quality Standard, Limitation, Rule, Order, License, Stipulation Agreement or Permit

Appellants contend that genuine issues of material fact preclude the district court's grant of summary judgment to respondent because genuine fact issues for a prima facie case exist in two ways: (1) respondent violated a DNR rule that requires a permit for the taking of threatened, state-listed valerian plants, and (2) the project's wetland-replacement plan is inadequate. *See* Minn.Stat. § 116B.03.

### 1. Valerian Plants

■■■ Appellants first argue that MnDOT failed to file for a permit required to take threatened valerian plants. *See* Minn. R. 6212.1800, subp. 1 (2005) ("A person may not take ... a threatened or endangered species of plant or animal without a permit from the commissioner."). Respondent counters that the valerian plants are located outside the project right-of-way, and thus there will be no taking. In granting respondent's summary-judgment motion, the district court determined that appellants "have failed to present any evidence that there is a state threatened plant species in the Project impact area or that the State has violated, or will violate, any environmental rule by 'taking' a protected plant if the Project proceeds." We agree.

The record does not contain sufficient evidence to support the conclusion that the valerian plants will be taken so as to require a permit. MnDOT staff, DNR staff, and senior ecologist Eggers all acknowledge that the valerian plants are not growing inside the right-of-way, and thus there is no evidence in the record that the valerian plants will actually be taken. Viewing the evidence in the light most favorable to appellants, there are no genuine issues of fact that a protected plant species will be taken by the project such that a permit would be required. Thus, the record does not demonstrate that fact issues sufficient to support a prima facie case for a MERA claim exist regarding whether MnDOT is violating a state rule that requires an environmental permit.

Appellants further argue that construction activities will cause adverse impacts to the nearby valerian plants located outside of the project's right-of-way. To support their position, appellants rely primarily on the affidavit of Eggers that the threatened valerian plants, while located outside of MnDOT's right-of-way, are at risk of de-

struction due to construction activities for the project.

But Eggers's affidavit did not consider MnDOT's agreement to construct a fence and berm to avoid any potential off-site impacts. Eggers's affidavit is based solely on the text of his June 4 and June 10, 2004 e-mails, which were written before MnDOT inspected the property on June 17, 2004, and subsequently decided to construct a fence and berm to protect the valerian plants. Thus, Eggers considered potential impacts without the benefit of knowing that a fence and berm would be constructed to protect the valerian plants. Further, Eggers, while discussing the DM & E alternative, acknowledges in the June 10 e-mail that permit conditions, such as construction of a fence could be used to protect the valerian plants. Thus, the fence that MnDOT implemented is the protective measure that Eggers advocated so that "[n]o loss of this rare species would occur." We conclude that Eggers's affidavit, dated before MnDOT adopted its fence and berm protective measures, is not sufficient to create genuine fact issues supporting a prima facie case of a permitting violation.

### 2. Wetlands

Appellants argue that because the project will require filling approximately seven acres of wetlands, it violates the legislative policy to protect air, water, land, and other natural resources from pollution, impairment, or destruction. *See* Minn.Stat. § 116B.01 (2004). Appellants also contend that the project violates environmental-quality standards under the Wetland Conservation Act (WCA), Minn.Stat. §§ 103G.221–103G.2372 (2004). Respondent counters that adverse wetland impacts are not entirely prohibited if replacement plans are approved under the rules and procedures outlined in Minn.Stat.

§ 103G.2242 (2004). The district court determined that appellants failed to present any genuine issues of material fact that the project or MnDOT's plan for wetland replacement violated WCA.

■ We first address appellants' contention that filling wetlands for the project violates the legislative policy of MERA. *See* Minn.Stat. § 116B.01 ("[I]t is in the public interest to provide an adequate civil remedy to protect air, water, land and other natural resources located within the state from pollution, impairment, or destruction."). Although appellants are correct that the statute provides a remedy for pollution, impairment, or destruction of the air, water, land, and other natural resources through maintenance of a cause of action, section 116B.03 of the chapter sets forth the statutory criteria to bring such a cause of action. Section 116B.03 requires genuine issues for either a violation, or likely violation, of an environmental-quality standard, limitation, rule, order, license, stipulation agreement or permit, or a material adverse effect on the environment, to establish a MERA claim. *See* discussion *supra* Part I. Accordingly, section 116B.01 cannot be used exclusive of section 116B.03, but rather must be used in conjunction with that section. Appellants cannot demonstrate a cause of action under the legislative-policy provision of MERA alone.

Second, we address the issue of the project's compliance with the wetland-replacement plan requirements under WCA. If wetlands are drained or filled, WCA requires that they be replaced by creation or restoration of other wetland areas. Minn. Stat. § 103G.222, subd. 1(a) (2004). The legislative mandate of WCA directs that "[w]etlands must not be drained or filled, wholly or partially, unless replaced by restoring or creating wetland areas of at least equal public value.... " *Id.;* Minn. R.

8420.0100 (2005). Section 103G.2242 outlines extensive procedures for evaluation of wetland impact and replacement. Here, the record reveals that MnDOT's Office of Environmental Services received and approved the wetland-replacement plan. Following appellant's challenge to the approval of the plan, BWSR denied appellants' petition and refused to hold a hearing, concluding that the petition was brought solely for the purpose of delay. On appeal, this court upheld BWSR's decision in *In re Wetland Conservation Act,* No. A04–314 (Minn.App. Dec.14, 2004).

■■■■■ Respondent asserts that appellants are collaterally estopped from making the identical claim that was decided by this court in *Wetland Conservation Act.* Collateral estoppel precludes litigants from raising issues that are identical with issues previously litigated and which were necessary and essential to the former judgment. *Aufderhar v. Data Dispatch, Inc.,* 452 N.W.2d 648, 650 (Minn.1990). Four elements are needed to succeed on a collateral-estoppel defense:

(1) the issue was identical to [the issue] in a prior adjudication;

(2) there was a final judgment on the merits;

(3) the estopped party was a party or in privity with a party to the prior adjudication; and

(4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Id.* This court has stated that administrative processes that do not involve hearings or agencies acting in judicial or quasi-judicial capacities do not preclude MERA claims. *Fort Snelling,* 673 N.W.2d at 177. "The rights and remedies provided [in MERA] shall be in addition to any administrative, regulatory, statutory, or common law rights and remedies...." Minn.Stat. § 116B.12 (2004).

■■■■ We agree with respondent's assertion that appellants are collaterally estopped from relitigating the propriety of the wetland-replacement plan approved by BWSR. First, BWSR's decision approving the wetland-replacement plan, affirmed by this court, was an administrative process in which BWSR was acting in a quasi-judicial capacity. Although BWSR denied appellant's request for a hearing, appellant had the opportunity to present written argument and additional evidence to supplement the record. Similarly, this court's consideration of appellants' challenge to BWSR's decision was a judicial determination in which appellants had the opportunity to submit written and oral argument. Because appellants had the opportunity to present their case to BWSR and this court, we conclude that the doctrine of collateral estoppel applies to appellants' challenge that the wetland-replacement plan violated a WCA standard or rule. *See* 673 N.W.2d at 177.

Second, appellants' challenge that the wetland-replacement plan violated a WCA standard or rule satisfies the four elements of collateral estoppel. *See Aufderhar,* 452 N.W.2d at 650. First, appellants' current challenge to the adequacy of the wetland-replacement plan under WCA is identical with that which was presented to BWSR and appealed to this court. Second, BWSR issued a final judgment on the merits, which was affirmed by this court on appeal. *See Wetland Conservation Act,* No. A04–314 (Minn.App. Dec. 14, 2004). Third, appellants, as the estopped party, were a party in the prior adjudication. Fourth, appellants had a full opportunity to litigate their challenge to BWSR's approval of the wetland-replacement plan before this court. Although BWSR did not afford appellants the opportunity for a hearing because it concluded that their petition was brought solely for the purpose

of delay, it did allow appellants to present written argument and additional evidence to supplement the record; and appellants had the opportunity to submit written and oral arguments to this court, which constitutes a full and fair opportunity to be heard. *See Aufderhar,* 452 N.W.2d at 650. Because the four elements of collateral estoppel have been met, appellants are collaterally estopped from again raising the identical claim questioning the adequacy of the wetland-replacement plan.

In *Wetland Conservation Act,* we stated that "the MERA claims are separate and inapplicable to this appeal" and that "we emphasize that we do not reach the ultimate questions raised by [appellants] under MERA." 2004 WL 2857357, at *5. Our ruling in *Wetland Conservation Act* did not preclude claims under MERA that the wetland-replacement plan will materially and adversely affect the environment. But a final judgment on the merits approving a wetland-replacement plan under Minn. Stat. § 103G.222 (2004), collaterally estops appellant from maintaining a cause of action asserting that the wetland-replacement plan violated an environmental-quality standard or rule under Minn.Stat. § 116B.03, subd. 1 (2004), of MERA. Minn. Stat. § 116B.02, subd. 5 (2004).

### B. Material Adverse Effect

Appellants argue that the district court failed to recognize that genuine issues of material fact exist over whether the project will materially adversely affect the environment and its natural resources, i.e., valerian plants and wetlands. Respondent argues that appellants have failed to make a showing of genuine issues of material fact to constitute a prima facie case under MERA.

■ Minnesota courts use a five-factor test to determine whether a project will have a material adverse effect, or is likely to a have material adverse effect, on the state's natural resources under MERA. *See Schaller v. County of Blue Earth,* 563 N.W.2d 260, 267 (Minn.1997) (developing and outlining five-factor test). The following five factors are flexible guidelines and need not all be present or material to find a material adverse effect:

(1) The quality and severity of any adverse effects of the proposed action on the natural resources affected;

(2) Whether the natural resources affected are rare, unique, endangered, or have historical significance;

(3) Whether the proposed action will have long-term adverse effects on natural resources, including whether the affected resources are easily replaceable (for example, by replanting trees or restocking fish);

(4) Whether the proposed action will have significant consequential effects on other natural resources (for example, whether wildlife will be lost if its habitat is impaired or destroyed);

(5) Whether the affected natural resources are significantly increasing or decreasing in number, considering the direct and consequential impact of the proposed action.

*Id.*

■ We consider the possible impact on the valerian plants and wetlands in turn.

### 1. Valerian Plants

Appellants argue that they have presented genuine issues of material fact of a material adverse effect on the environment because the project will destroy a robust community of state-listed threatened valerian plants. But all the expert affidavits agree that the valerian plants only exist near to, but outside of, the right-of-way. In that regard, Eggers indicated that fencing and protecting the valerian plants

would be sufficient to prevent the loss of the species in the area. And MnDOT has voluntarily agreed to construct a fence and berm to protect the valerian plants. Thus, MnDOT's measures to protect the valerian plants located outside the construction right-of-way that could be indirectly effected, preclude a finding of any genuine issues of material fact of potential adverse effects on the valerian plants.

Further, appellants fail to specifically address the *Schaller* factors to make their case for a material adverse effect on the valerian plants. *See* 563 N.W.2d at 267. And our review of the record fails to reveal a material adverse effect. First, the valerian plants are not directly located within the construction right-of-way and a fence and berm will be constructed to protect the valerian plants. *See id.* Second, appellants did not present evidence of potential impacts on the valerian plants if MnDOT utilizes a fence and berm during the construction of the project. *See Schaller,* 563 N.W.2d at 267. Thus, appellants have failed to establish genuine issues of material fact under *Schaller;* the mere fact that the valerian plants are rare, without further evidence of how they will be affected despite the protective measures, does not suffice to meet appellants' burden. Because appellants have failed to present any further evidence, we conclude that there are no genuine issues of material fact regarding the valerian plants.

### 2. Wetlands

Appellants assert that the destruction of wetlands will have a material adverse effect on the environment. The district court failed to comment on this claim, other than to state that appellants have not presented any evidence that the project's filling of wetlands will be materially adverse to the environment.

Here, appellants again fail to specifically address the *Schaller* factors in support of their material-adverse-effect contention. Our analysis of the record fails to reveal a material adverse effect. First, it is undisputed that the project will require filling seven acres of wetlands. *See id.* But the wetlands will be replaced by a two-to-one ratio under a replacement plan pursuant to WCA. *See* Minn.Stat. § 103G.222, subd. 1(a). Moreover, the TEP found that the replacement wetlands will be of higher quality than the wetlands that will be filled. Second, the wetland replacement plan will replace the filled wetlands by a two-to-one ratio in the same county; and due to the two-to-one replacement ratio, the project will not result in a net loss of wetlands. *See Schaller,* 563 N.W.2d at 267. We conclude that without evidence of a material adverse effect under *Schaller,* and given that the wetland-replacement plan was upheld under WCA, appellants do not present genuine fact issues for a material adverse effect on wetlands even when we view the evidence in the light most favorable to them.

### II.

*Credibility and Weight of the Evidence Determinations*

■■■■ Appellants argue that the district court improperly judged the credibility of the witness affidavits and weighed the evidence in granting respondent's motion for summary judgment. "The district court's function on a motion for summary judgment is not to decide issues of fact, but solely to determine whether genuine factual issues exist." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 70 (Minn.1997). The district court "must not weigh the evidence on a motion for summary judgment." *Id.* But the court is also not required to ignore its conclusion that the evidence presented has no probative value and that reasonable

persons could not reach different conclusions from the evidence presented. *Id.* A mere metaphysical doubt on a factual issue is not sufficient to defeat a motion for summary judgment. *Id.* at 71.

To argue that the district court improperly made credibility judgments, appellants point to alleged genuine fact issues over the threat to the valerian plants. Appellants contend that the district court improperly compared Eggers's opinion regarding the danger to the valerian plant with the opinions of members of MnDOT's staff and the DNR's staff who concluded that while the valerian plants were outside of the actual construction right-of-way, construction of a fence and berm to protect the plants would be sufficient. We conclude that this evidence lacks probative value because Eggers's e-mails were written before the fence and berm were planned; and he previously stated that constructing a fence and berm would protect the plants from adverse construction impacts. The district court was not required to ignore its conclusion that appellants' case lacked evidence sufficient to survive summary judgment. *See DLH,* 566 N.W.2d at 70.

We conclude that the lack of genuine issues of material fact regarding the threat to the valerian plants defeats appellants' claim of improper weight and credibility determinations by the district court.

## III.

*Motion for Amended Findings*

Appellants argue that the district court improperly denied their motion for amended findings of the district court's order granting respondent's summary-judgment motion. A party may move the district court to amend or add findings to its order under Minn. R. Civ. P. 52.02. A district court's denial of a posttrial motion for amended findings will not be disturbed absent an abuse of discretion. *Fort Snelling,* 673 N.W.2d at 177–78. A motion for amended findings must identify the alleged defect and explain why the findings are defective. *Id.* at 178. Further, the moving party must show that the district court was compelled to make the requested findings and failed to do so to overturn a district court's denial of the motion. *Id.*

Here, appellants' motion for amended findings argued that it was inappropriate for the district court to mention appellants' prior challenge to MnDOT's condemnation proceeding. But this fact was part of the procedural history of the dispute and was not inappropriate. The remainder of the motion reiterates at length appellants' arguments that the district court rejected in its order. Because appellants do not raise any findings that the district court was compelled to make or failed to make, the district court did not abuse its discretion in rejecting the motion for amended findings. *Cf. Edina Cmty. Lutheran Church v. State,* 673 N.W.2d 517, 523 (Minn.App.2004) (district court's findings of fact must be sufficient to permit meaningful appellate review). Thus, we conclude that the district court did not abuse its discretion by denying the motion for amended findings.

## DECISION

Appellants have failed to present genuine issues of material fact to support a prima facie case for violations of MERA. Because appellant's challenge to the wetland-replacement plan under Minn.Stat. § 103G.222 (2004) was the subject of a final judgment on the merits, appellant is collaterally estopped from maintaining a cause of action under MERA asserting that it violated an environmental standard or rule. Finally, the district court did not improperly judge the credibility of the wit-

nesses or weigh the evidence on a motion for summary judgment and its findings were sufficient. Accordingly, we affirm the district court's grant of respondent's motion for summary judgment.

**Affirmed.**