# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

06-6033MN

_____

| | | |
|---|---|---|
| In re: Denise Irene Patch, | * | |
| | * | |
| Debtor | * | |
| | * | |
| Bryan Blocker, Trustee for the Heirs and Next-of-Kin of Dillon Bryan Blocker, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Denise Irene Patch, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 13, 2006
Filed: November 27, 2006 (Corrected January 5, 2007)

_____

FEDERMAN, MAHONEY, and McDONALD, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Denise Irene Patch ("Debtor") appeals the judgment of the bankruptcy court[1] entering summary judgment in favor of Bryan Blocker ("Blocker") on Blocker's claim

_____

[1] The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota.

that Debtor's obligation to him as personal representative of the estate of their three year old son, Dillon, is excepted from discharge under 11 U.S.C. §523(a)(6). Debtor also appeals the bankruptcy court's order denying her motion for summary judgment. We affirm the bankruptcy court's decision.

I.

Debtor and Blocker had two children, Breanna and Dillon Blocker. Debtor and Blocker's relationship ended in January 2001. Debtor then began dating Steven McBride in March 2001. Shortly thereafter, McBride moved into Debtor's apartment. Both Breanna and Dillon resided with the couple in the apartment.

McBride began physically abusing Dillon shortly after moving into the apartment. Debtor testified in her deposition that she knew McBride was beating Dillon. Debtor also testified that at the time McBride moved into the apartment with her, she had been working at a daycare center where she took Dillon. Debtor had received a "preschool certificate" from Rasmussen College and, as part of her training there, was trained in spotting and reporting child abuse. Debtor quit the daycare job and withdrew Dillon from daycare when the employees at the center began to question her about Dillon's bruises.

Debtor also enrolled Dillon in a speech therapy program with the local school district because of a speech impediment. In her deposition, however, Debtor conceded that she removed Dillon from the program because she was concerned that the therapist would begin questioning the source of Dillon's bruises. Debtor additionally testified in her deposition that she asked McBride to stop beating Dillon. Debtor, however, failed to take any additional steps to stop McBride's abuse of Dillon.

The night prior to Dillon's death, September 17, 2001, Debtor was working the overnight shift at a local Target store. McBride called Debtor that evening and stated that Dillon was crying and had hurt his head and penis from a fall. Debtor left her

shift early to come home to check Dillon's condition. When Debtor arrived home, she noticed a large bruise on Dillon's head. She also observed that Dillon was having a difficult time speaking and breathing. Debtor, however, did not seek medical treatment for Dillon. Rather, she and McBride put Dillon in their bed with McBride, and Debtor slept on the couch in the living room.

Debtor checked Dillon the next morning when she awoke, but Dillon was dead. At the time of his death, he was three years old. The autopsy revealed that Dillon had died from multiple blunt force injuries to his head. The autopsy report also revealed that Dillon had suffered acute injuries to virtually every part of his body. One of his teeth had been knocked out and was found by the coroner in his stomach.

McBride was convicted of first-degree felony murder for Dillon's death. Debtor was originally charged with second-degree murder for Dillon's death, but she eventually pled guilty to second-degree manslaughter.

The trial court imposed a sentence of eight years on Debtor, which is double the presumed sentence for second-degree manslaughter under Minnesota law. The trial court enhanced Debtor's penalty because of the presence of several aggravating factors, including Dillon's vulnerability and Debtor's particular cruelty in failing to seek medical attention for Dillon on the night prior to his death. The Minnesota Court of Appeals affirmed the trial court's enhanced sentence.[2]

Blocker, as personal representative of Dillon's estate, filed a wrongful death action against McBride and Debtor in Minnesota state court on December 26, 2003. (the "Wrongful Death Action"). Counts II and III of the Wrongful Death Action are directed against Debtor. Court II alleges that Debtor was negligent in entrusting

---

[2] *See State v. Patch*, 2003 WL 1481302 (Minn. Ct. App. March 25, 2003).

McBride with Dillon's care. Count III contends that Debtor was negligent in failing to seek medical attention for Dillon on the night he died.

While the Wrongful Death Action was pending, Debtor filed for relief under Chapter 7 of the Bankruptcy Code on June 17, 2005. Blocker filed this adversary complaint against Debtor on September 15, 2005. Blocker contends in the adversary that Debtor's obligation to Dillon's estate arising out of his death is excepted from discharge, under 11 U.S.C. §523(a)(6), for willful and malicious injury.

Debtor filed a motion for summary judgment, contending that the uncontroverted evidence showed she merely acted negligently or recklessly with Dillon, and that she did not act with the intent to injure Dillon as required by § 523(a)(6). Blocker filed a memorandum of law in opposition to Debtor's motion, as well as the Debtor's deposition. The bankruptcy court issued an order denying Debtor's motion and granting summary judgment in favor of Blocker *sua sponte*. The bankruptcy court did not issue a memorandum opinion explaining its rationale.[3] Debtor filed a timely notice of appeal of the bankruptcy court's order and this appeal follows.

## II.

Our review of the bankruptcy court's entry of summary judgment is *de novo*.[4] Summary judgment is appropriate when the evidence, viewed in the light most

---

[3] The parties intimated at oral argument that the bankruptcy court may have explained its rationale on the record at the hearing on Debtor's motion. Neither party, however, included the transcript of the hearing in their appendix. Therefore, the transcript of the hearing is not a part of the record on appeal.

[4] *A&L Laboratories, Inc. v. Bou-Matic LLC*, 429 F.3d 775, 778 (8th Cir. 2005).

favorable to the non-moving party, demonstrates that there is no genuine issue of material fact in dispute so the moving party is entitled to judgment as a matter of law.[5]

## III.

Debtor first posits two procedural arguments on appeal. Debtor first contends that the bankruptcy court erred when it, *sua sponte*, entered summary judgment in favor of Blocker. A trial court may only enter summary judgment *sua sponte* when the party against whom the judgment will be entered has been given sufficient notice and an opportunity to demonstrate why summary judgment should not be entered.[6]

When a party files a motion for summary judgment, it has put the issue that there are no disputed material facts before the trial court. The movant has the opportunity to present all of its evidence and arguments and is on notice that the trial court may enter judgment against it if the evidence demonstrates that its opponent is entitled to judgment as a matter of law. Thus, a trial court has the power to grant a non-moving party summary judgment, even where the nonmovant does not file a cross-motion for summary judgment.[7]

Here, Debtor filed a motion for summary judgment, arguing that the summary judgment record established that her liability to Dillon's estate did not fall within the discharge exception contained in §523(a)(6). She had the opportunity to fully present the undisputed facts and her legal arguments to the bankruptcy court. The bankruptcy

---

[5] *Id.*; *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 770 (8th Cir. 2001); Fed. R. Civ. P. 56(c).

[6] *Bendet v. Sandoz Pharmaceuticals Corp.*, 308 F.3d 907, 912 (8th Cir. 2002).

[7] *Acton v. City of Columbia*, 436 F.3d 969, 975 n. 5 (8th Cir. 2006).

5

court, therefore, had the power to *sua sponte* enter summary judgment in favor of Blocker.[8]

Debtor's second procedural argument is that Blocker is collaterally estopped by his Wrongful Death Action from now asserting that Debtor's obligation to Dillon's estate resulted from a willful and malicious injury to Dillon under §523(a)(6). Debtor points to the fact that Blocker only asserts two negligence causes of action against her in the Wrongful Death Action, and no claim for intentional tort. We reject this argument.

Because Blocker filed the Wrongful Death Action in Minnesota state court, Minnesota's collateral estoppel law applies.[9] Under Minnesota law, a party is collaterally estopped from relitigating an issue if: (1) the issue was identical to the issue in a prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party, or its privy, was given a full and fair opportunity to be heard on the adjudicated issue.[10]

Here, Debtor's filing of her petition stayed Blocker's prosecution of the Wrongful Death Action. The record is unclear as to how far the Wrongful Death Court Action had proceeded, but there was certainly no judgment on the merits. Accordingly, Blocker is not collaterally estopped by the Wrongful Death Action in prosecuting his § 523(a)(6) claim.

---

[8] We note that the deposition transcript submitted with Blocker's memorandum in opposition to Debtor's motion for summary judgment was incomplete. To the extent the missing portions may have contained testimony favorable to the Debtor, she should have presented them to the bankruptcy court.

[9] *United States v. B.H.*, 456 F.3d 813, 816-17 (8th Cir. 2006).

[10] *Zander v. State*, 703 N.W.2d 845, 854 (Minn. Ct. App. 2005).

IV.

Turning to Debtor's substantive argument, Debtor first argues that the summary judgment record does not support the bankruptcy court's order entering summary judgment in favor of Blocker. Section 523(a)(6) excepts from discharge any debt that the debtor incurred "for a willful and malicious injury by the debtor to another entity."[11]

"Willful and malicious are two distinct requirements that [Blocker], as the party seeking to avoid the discharge of the debt, must prove by a preponderance of the evidence."[12] "Willfulness" is defined as "headstrong and knowing" conduct and "malicious" as conduct "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm."[13]

As stated above, the parties do not dispute the facts, each conceding that Debtor knew that Dillon had been a victim of abuse for an extended period of time, that she continued to leave Dillon with his abuser, that she purposefully hid that abuse from others by removing Dillon from daycare and speech therapy, and that, on the night of Dillon's death, she prevented him from obtaining medical help when he obviously needed it. While conceding these facts, Debtor argues that they amount to mere negligence or recklessness; Blocker says they meet the standard for willful and malicious injury under § 523(a)(6).

---

[11] 11 U.S.C. § 523(a)(6).

[12] *Scarborough v. Fischer (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir. 1999).

[13] *Id.* (citation omitted).

7

"Willfulness" is defined as "deliberate or intentional."[14]   In determining whether a debtor acted willfully, the Supreme Court in *Geiger* agreed with the Eighth Circuit that "the (a)(6) formulation triggers in the lawyer's mind the category of 'intentional torts,' as distinguished from negligent or reckless torts."[15]   The Debtor argues that she merely failed to act and, thus, she did not commit an intentional tort. In other words, boiled down to its essence, the Debtor argues that a passive failure to act (acts of omission), as opposed to overt conduct (acts of commission), cannot meet the standard for nondischargeability under § 523(a)(6).  We disagree.

At the outset, we disagree with the Debtor's assertion that her conduct amounted to mere acts of omission:  her continually exposing Dillon to McBride, who she knew was abusing Dillon, and her removal of Dillon from daycare and speech therapy for the purpose of preventing people from noticing the bruises and reporting them, are, in our view, acts of commission.  But even assuming that the Debtor took no affirmative action to cause Dillon's injuries, and that she merely failed to act to prevent them or to seek medical attention for them, the failure to act in the face of a duty to do so can constitute an intentional tort.

For example, in *Gibson v. Brewer*,[16] the Missouri Supreme Court held that a diocese could be liable in intentional tort based upon its failure to supervise a priest. And, in *Travis v. Dreis & Krump Mfg. Co.*,[17] the Michigan Supreme Court found an intentional tort where an employer had actual knowledge that an injury was likely to occur from a dangerous work condition, but disregarded it.  The defendant there had

---

[14] *Scarborough*, 171 F.3d at 643; *see also Kawaauhau v. Geiger*, 523 U.S. 57, 61 n. 3, 118 S.Ct. 974, 977 n. 3, 140 L.Ed.2d 90 (1998).

[15] *Geiger*, 118 S.Ct. at 977.

[16] 952 S.W.2d 239 (Mo. 1997).

[17] 551 N.W.2d 132, 142 (Mich. 1996).

8

argued that it had not committed an intentional tort and that, therefore, the injured employee was limited to worker's compensation coverage. In rejecting that argument, the Court held that the phrase "deliberate act," as used in the applicable state statute, should be interpreted to encompass both commissions and omissions.[18]

It almost goes without saying that the Debtor had a duty to protect Dillon. Hence, the fact that she merely failed to act does not, in and of itself, preclude a finding that she committed an intentional tort, nor does it render § 523(a)(6) inapplicable.

We recognize that "[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself'" and that nondischargeability requires a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.[19] However, the position urged by the Debtor applies this concept too strictly in that it requires the Debtor to have actually intended for Dillon to die in order for the debt resulting from his death to fall within § 523(a)(6).

Instead, as several post-*Geiger* courts have held, the willful injury standard is met if the injury was substantially certain to result from the debtor's conduct.[20] This is in part because, in affirming the Eighth Circuit's decision in *Geiger*, the Supreme Court approved of the Eighth Circuit's reliance on the Restatement of Torts, which provides:

---

[18] *Id.*

[19] *Geiger*, 118 S.Ct. at 977.

[20] *Via Christi Regional Med. Ctr. v. Budig (In re Budig)*, 240 B.R. 397, 401 (D. Kan. 1999) (listing cases using the substantially certain standard to define the willful injury element of § 523(a)(6) (citing *Texas v. Walker*, 142 F.3d 813 (5th Cir. 1998); *In re Slosberg*, 225 B.R. 9 (Bankr. D. Me. 1998); *In re Kidd*, 219 B.R. 278 (Bankr. D. Mont. 1998); *In re Williams*, 233 B.R. 398 (Bankr. N.D. Ohio 1999)).

Intent is not, however, limited to consequences which are desired. *If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the laws as if he had in fact desired to produce the result.* As the probability that the consequences will follow decreases, and *becomes less than a substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness. . . .* As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence . . . .[21]

"The substantial certainty standard is consistent with the holding in *Geiger* which requires a showing that the debtor intend the consequence of his act."[22] We agree. Accordingly, the bankruptcy court was not required to find that the Debtor actually intended for Dillon to die in order for this debt to fall within § 523(a)(6)'s willfulness standard; rather, the bankruptcy court was only required to find that she acted, or failed to act when she had a duty to do so, and that she knew it was substantially certain Dillon would be harmed as a result.

---

[21] Restatement (Second) of Torts § 8A, comment b, p. 15 (1964) (emphasis added), *quoted in In re Geiger*, 113 F.3d 848, 852-53 (8th Cir. 1997); *In re Budig*, 240 B.R. at 400.

[22] *In re Budig*, 240 B.R. at 400. *See also Jafarpour v. Shahrokhi*, 266 B.R. 702, 708 (B.A.P. 8th Cir. 2001) (mentioning the Eighth Circuit's reliance on the Restatement's substantially certain language and applying that standard); *Via Christi Regional Medical Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163 (Table), 2000 WL 1275614 at *3 (10th Cir. 2000) (unpublished decision) (holding that the willfulness element turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur); *In re Clark*, 330 B.R. 702, 707 (Bankr. C. D. Ill. 2005) (holding that a showing of intent under § 523(a)(6) requires "either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts to establish the intent required in *Geiger*."). *But see, e.g., In re Jenkins*, 258 B.R. 251 (Bankr. N.D. Ala. 2001) (holding that the debtor must have specifically intended the injury).

With that in mind, and viewing the evidence in the light most favorable to the Debtor, the undisputed facts establish that Dillon's injuries were substantially certain to occur as a result of Dillon's being left with McBride and the failure to seek medical attention on the night he died.

The next issue as to willfulness is whether the Debtor subjectively knew that Dillon's injuries were substantially certain to result from her actions and inactions. On the issue of the Debtor's subjective knowledge, the dissenting opinion, *infra*, states that, in order to meet the standard of willfulness under § 523(a)(6), Blocker must demonstrate that Debtor was substantially certain that her conduct would result in injuries severe enough to Dillon to cause his death. We believe that this view too narrowly focuses the inquiry on the events of the night that Dillon died. We disagree, concluding instead that it is appropriate to look at the entire series of events surrounding the abuse, culminating with the events of that evening. The dissent properly points out that the issue is her subjective belief, and not the reasonableness of that belief. We view her deposition statement that she did not know that McBride was continually abusing Dillon as self-serving and contrary to the other evidence. There is no dispute, based on her deposition testimony, that she knew McBride was abusing Dillon, that she asked him to stop, that she left him notes to that effect, and that she removed Dillon from daycare and speech therapy in order to hide that abuse from the authorities. To the extent she may have indicated that she did not comprehend the severity of abuse, the autopsy report showed Dillon had over thirty enumerated injuries, including, among other things, extensive bruises and contusions on nearly every part of his body, many of which were consistent with human bite marks, multiple rib fractures of various ages on both sides of his body, burn marks on his right arm and hand, and a knocked-out tooth. In sum, the record clearly shows that the Debtor knowingly and continually placed Dillon in harm's way over a period of several months. Under these particular circumstances, we believe the bankruptcy court properly held that her conduct meets the willfulness element of § 523(a)(6).

11

"Malicious" is defined as conduct "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm."[23] Some courts have described "malicious" as being "in conscious disregard of one's duties or without just cause or excuse."[24] Other courts have said that a debtor's conduct is malicious "if he was substantially certain that his actions or inactions would result in injury to [the plaintiff], but acted or omitted to act in disregard of that knowledge."[25] "A finding of malice does not require a finding of ill will, but rather a lack of just cause or excuse."[26] If the debtor's conduct was inexcusable and resulted in an inevitable injury to the plaintiff, it is malicious.[27]

Even though the Debtor may not have harbored ill will toward Dillon or wanted him to die, the Debtor's conduct was inexcusable and resulted in his inevitable injuries and death. Because her conduct was undoubtedly certain to cause Dillon harm, it was targeted at him and was, therefore, malicious under § 523(a)(6).

The recent case of *In re Limmer*[28] is similar to this one. There, the plaintiff was the estate of a young woman who had died as the result of being given a drink with a "date rape" drug, GHB, in it. The debtor had been convicted of, among other things, accessory after the fact to manslaughter in connection with the woman's death. The

---

[23] *In re Scarborough*, 171 F.3d at 641.

[24] *Estate of Samantha Reid v. Limmer (In re Limmer)*, ___ B.R. ____, 2006 WL 1614838 (Bankr. E.D. Mich. May 9, 2006) (quoting *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (B.A.P. 6th Cir. 2000)).

[25] *Alverio v. Muhammad (In re Muhammad)*, 135 B.R. 294, 298 (Bankr. N.D. Ill. 1991).

[26] *Id.* (citation omitted).

[27] *Id.*

[28] *In re Limmer*, ___ B.R. ____, 2006 WL 1614838.

debtor's role in the scheme was that he bought the drug, and took it to his apartment in anticipation of having a party there. The debtor left the party and went to his bedroom, knowing that three other men at the party would later prepare drinks, in which they had poured the GHB, for the girls there. Two of the girls became sick. After the debtor was apprised of the problem, he told the other men to clean up the mess they had made and sent one of the men to get a carpet cleaner. One of the girls started having trouble breathing. The debtor asked one of the men to check her pulse, but would not allow them to call an ambulance. Several hours later, the three men took the girls to the hospital. The debtor did not go with them, and told them not to tell the police they had been at his apartment. One of the girls died.

The bankruptcy court in that case found the debt to the girl's estate to be nondischargeable under § 523(a)(6) because, although the debtor did not actually give the drug to his female guests, he intentionally delayed seeking medical treatment, knowing that they had ingested GHB. The court found he knew that the consequences of serious illness or death were substantially certain to result from his actions of supplying the GHB and then instructing the other defendants to clean up rather than seek medical attention for the dying girl. Because his actions were without just cause or excuse, the resulting debt was nondischargeable and the court granted summary judgment in favor of the plaintiff.[29]

The same is true here. The Debtor knew Dillon had been a victim of abuse, continued to expose him to his abuser, hid the abuse from others, and prevented him from getting medical help when he obviously needed it. She had a duty to protect Dillon, and she knew that serious injury or death were substantially certain to result from McBride's abuse, yet she failed to protect him without just cause or excuse. Consequently, even viewing the evidence in the light most favorable to the Debtor, the record establishes that the Debtor willfully and maliciously caused Dillon's

---

[29] *Id.* at *4.

injuries and death within the meaning of § 523(a)(6).[30]  Therefore, the bankruptcy court did not err in granting summary judgment in Blocker's favor.

## V.

Debtor also maintains on appeal that the bankruptcy court erred when it denied her motion for summary judgment.[31]  As to her motion, the bankruptcy court was required to view the evidence in the light most favorable to Blocker.  In light of the fact we have already found that the bankruptcy court did not err in granting summary judgment in favor of Blocker (viewing the evidence in the light most favorable to the Debtor), it naturally follows that the Debtor did not meet her burden on her own motion for summary judgment.

## VI.

In conclusion, the evidence in this case is undisputed.  Thus, the question is whether the undisputed evidence satisfied the willful and malicious standard under *Geiger*, as opposed to mere negligence or recklessness.  Even viewing the evidence in the light most favorable to Debtor, the record establishes that the Debtor's conduct

---

[30] This conclusion is based, not on the Debtor's guilty plea or the state court's doubling of her sentence *per se*, but is based on the undisputed evidence in the record as a whole, including, *inter alia*, the police report from the day Dillon died, the autopsy report, the portions of the Debtor's deposition included in the record, and the state appellate court's recitation of the facts in its decision affirming her sentence.

[31] We note that generally, the denial of a motion for summary judgment is an interlocutory order not subject to review on appeal.  *Hope v. Klabal*, 457 F.3d 784, 789 (8th Cir. 2006).  Where, however, a trial court also issues a final order granting summary judgment in favor of the opposing party, the interlocutory order  merges into the final order and thus is subject to appellate review.  *U.A.W. v. Randall Div. of Textron, Inc.*, 5 F.3d 224, 228 (7th Cir.1993).

was substantially certain to result in Dillon's injury and death and, therefore, she willfully and maliciously caused Dillon's injuries and death within the meaning of § 523(a)(6). Therefore, the bankruptcy court did not err in granting summary judgment in Blocker's favor and denying summary judgment in the Debtor's favor. The judgment is affirmed.

McDONALD, Bankruptcy Judge, dissenting

I agree with the majority's conclusion that a debtor inflicts a willful and malicious injury on a creditor under 11 U.S.C. §523(a)(6) if she knows with substantial certainty that her actions will result in that injury. I do not agree, however, that when reviewing the summary judgment record in the light most favorable to Debtor that there are no material issues of fact in dispute so that Blocker is entitled to judgment as a matter of law. I, therefore, respectfully dissent.

I would begin by noting that the analysis of whether a person commits an intentional tort must focus on whether the person was substantially certain that her conduct would result in the injury in question. Valencia v. Reardan-Edwall School Dist. No. 1, 104 P.3d 734, 736 (Wash. Ct. App. 2005). Thus, because Blocker is seeking to except from discharge Debtor's obligation to Dillon's estate in the Wrongful Death Action, Blocker must demonstrate that Debtor was substantially certain that her conduct would result in Dillon's death.

I would also note that although neither §523(a)(6), nor the case law on intentional torts in general, give precise guidance on when a person acts with substantial certainty. It is clear, however, that substantial certainty is more than acting with knowledge that one's conduct creates a high probability of the injury to another, which is defined as recklessness. In re Boston Reg'l. Med. Cent., 328 F.Supp.2d 130, 164 (D. Mass. 2004); See also RESTATEMENT (SECOND) OF TORTS §500, cmt. f. I believe that when reviewing Debtor's deposition testimony in the light most favorable

15

to Debtor, there are material questions of fact as to whether Debtor acted with substantial certainty or recklessness with respect to Dillon's death.

There is no doubt, as the majority points out, that the autopsy report indicates that Dillon had suffered a number of significant past injuries because of McBride's abuse of him. There is also no question that Debtor knew that McBride had abused Dillon in the past and took action to hide that abuse from others. It is also uncontroverted that Debtor observed that Dillon was having difficulty breathing and speaking the morning that Dillon died. But the summary judgment record, in my view, does contain sufficient evidence that creates a material question of fact as to whether Debtor was substantially certain that leaving Dillon with McBride and failing to obtain medical help for Dillon would result in Dillon's death for two reasons.

First, Debtor repeatedly testified that she did not know that McBride's abuse of Dillon was frequent or severe, or at least severe enough to result in Dillon's death. The majority takes the position that this portion of Debtor's deposition testimony cannot create a material issue of fact because the testimony is self-serving and contradicted by the autopsy report. I agree that the autopsy report contains objective evidence that Dillon sustained a number of significant injuries at the hands of McBride. I believe, however, that Debtor's deposition fails to establish whether or not Debtor was subjectively aware of all of the injuries listed in the autopsy report. Also, assuming that Debtor was aware of those injuries, a material question of fact remains as to whether Debtor was substantially certain, in a subjective sense, that the abuse that would result in these types of injuries would be severe enough to cause Dillon's death.

Second, Debtor testified that she believed Dillon was not critically injured because he was initially responsive to Debtor's questions and Debtor subjectively believed he had suffered a concussion, from which he would eventually recover. Once again, as the majority notes, there is certainly objective evidence in the record

16

that establishes that Dillon was in dire need of medical assistance the morning of his death. I believe, however, that Debtor's deposition testimony creates a material question of fact as to whether she was substantially certain that Dillon would die absent medical treatment.[32]

Given that we must view this summary judgment record in the light most favorable to Debtor, I believe there are material questions of fact as to whether Debtor's conduct in leaving Dillon with McBride and failing to obtain medical assistance for Dillon constitutes substantial certainty or recklessness with respect to Dillon's death. Accordingly, I would reverse the bankruptcy court's entry of summary judgment in favor of Blocker and remand the case to the bankruptcy court for a trial.

---

[32] I note that because we must focus on Debtor's subjective belief in analyzing whether Debtor was substantially certain that her conduct would result in Dillon's death, the reasonableness of her belief is not at issue. See Minnesota Fire & Cas. Co. v. Greenfield, 855 A.2d 854, 871 (Pa. 2004).